CITIZENS FEDERAL BANK, F.S.B., Appellee,

v.

ZIEROLF et al., Appellants.

[Cite as *Citizens Fed. Bank, F.S.B. v. Zierolf* (1997), 119 Ohio App.3d 46.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 16090.

Decided April 4, 1997.

*Walter Reynolds,* for appellee.

*Alfred J. Weisbrod,* for appellants.

WOLFF, Judge.

Linda Zierolf and Louis A. Sedlock appeal from a judgment of the Montgomery County Court of Common Pleas which granted summary judgment to Citizens Federal Bank, F.S.B. ("Citizens").

The relevant facts and procedural history are as follows.

Zierolf signed a promissory note in 1984 which memorialized a loan in the amount of $160,000 from Citizens to Zierolf and others. Prior to 1990, Sedlock, who is Zierolf's father, owned a certificate of deposit ("CD") at Citizens. In 1990, pursuant to estate planning advice from his attorney, Sedlock added Zierolf's name to the CD, giving her equal power over the CD. Sometime after Zierolf had been added as a signatory on the CD, she defaulted on the promissory note to Citizens.

Citizens sought to recover on the promissory note by filing an action against Zierolf in the Montgomery County Court of Common Pleas. On February 8, 1995, the court ruled that the note executed by Zierolf was a valid and enforceable obligation. Sedlock subsequently tried to remove Zierolf's name from the CD, but Citizens refused to allow him to do so because Citizens claimed a right to set off against the CD and had placed a hold on the CD. In March 1995, Citizens sought a declaratory judgment that it had the right to set off Zierolf's debt against the CD. The trial court granted Citizens' motion for summary judgment, finding that no genuine issue of material fact existed regarding Citizens' right to set off Zierolf's debt against the CD.

Zierolf and Sedlock assert three assignments of error on appeal. We will address these assignments in the order which facilitates our discussion.

"II. The trial court erred in granting plaintiff's motion for summary judgment since a genuine issue of material fact exists as to whether the funds used for the setoff by way of the CD are owned by Zierolf.

"III. The trial court erred in granting plaintiff's motion for summary judgment as a matter of law when it ruled that the 'realities of ownership' defense cannot be claimed by Zierolf or Sedlock against Citizens."

■ The parties agree that three conditions must be satisfied before a bank may set off a customer's deposits against his indebtedness to the bank: (1) the existence of mutuality of obligation, (2) the debtor's ownership of the funds used for setoff, and (3) the ripeness of the existing indebtedness for collection at the time of the setoff. See, generally, *Daugherty v. Cent. Trust Co.* (1986), 28 Ohio St.3d 441, 28 OBR 492, 504 N.E.2d 1100; *Walter v. Natl. City Bank* (1975), 42 Ohio St.2d 524, 71 O.O.2d 513, 330 N.E.2d 425. The parties do not dispute that the third condition had been satisfied before Citizens put a hold on the certificate of deposit, *i.e.*, Zierolf had defaulted on the promissory note. The parties disagree, however, about whether mutuality of obligation had existed and whether Zierolf's ownership of the funds had been sufficiently established to justify the setoff. We begin our discussion with the latter issue.

Citizens argues that Zierolf's ownership of the certificate of deposit was established by R.C. 1107.08(A) (now 1109.07), 1151.19(A), and 1161.23(A)(1) (hereinafter collectively referred to as "the bank protection statutes"), which protect banks from liability for having acted on the order of any one joint account holder in a manner that may be inconsistent with the rights that the joint account holders may assert against each other. In other words, Citizens claims that the bank protection statutes authorized it to treat Zierolf as the owner of the CD because she was authorized to direct the payment of those funds independently from Sedlock. By way of analogy, Citizens also relies upon cases in which courts have held that the "realities of ownership" could not be asserted against a bank so as to bar setoff where one of two joint holders of an account pledged the account as collateral for a loan. See, *e.g.*, *Wilhelm v. Peoples Fed. S. & L. Assn.* (1991), 72 Ohio App.3d 258, 594 N.E.2d 635; *Fifth Third Bank v. Lilly* (1988), 50 Ohio App.3d 67, 552 N.E.2d 962.

Sedlock and Zierolf contend, on the other hand, that the statutes and cases cited by Citizens and relied upon by the trial court are inapplicable because Zierolf had not directed the bank to pay the funds in the joint account to any person or entity, including Citizens itself, and because she had not pledged the accounts as collateral for her note. They rely upon cases in which the "realities

of ownership" of a joint account were disputed and the parties were permitted to present evidence rebutting the usual presumption that the funds in a joint account are owned by the account holders in equal shares. See, *e.g., In re Estate of Thompson* (1981), 66 Ohio St.2d 433, 20 O.O.3d 371, 423 N.E.2d 90, overruled in part on other grounds, *Wright v. Bloom* (1994), 69 Ohio St.3d 596, 635 N.E.2d 31.

The parties agree that the question presented in this case—whether a bank may set off a debt against a joint account which has not been pledged as collateral without inquiring into the "realities of ownership" of the account—is one of first impression in Ohio. Citizens encourages us to interpret the bank protection statutes broadly, as the trial court did, and to conclude that the statutes negated any obligation on the bank's part to determine the true owner of the funds deposited in the joint account prior to setting off the debt of one of the account holders. In our view, however, such an expansive reading of the statutes is unsupported by their language or case law. The statutory language evinces an intent to place the risk of improper conduct by a joint account holder on those who created the joint account and vested the joint account holder with the power to dispose of the money in the account. Thus, when a joint account holder disposes of the money in an account in accordance with the terms of the joint account, the bank is not obligated to inquire into the actual ownership of the funds. Rather, the joint account holders must resolve among themselves any dispute they have as to the particular joint account holder's right to order payment of the funds. The bank's involvement in the transaction is not a consideration.

Here, however, Zierolf did not act improperly with respect to the joint account, *i.e.*, she did not withdraw or order the payment of funds in which she had no right of ownership, as contemplated by the bank protection statutes. Rather, the bank appropriated the funds under its own claim of right based on its position that Zierolf was an owner of the account. The risk that the bank would appropriate the account was not a risk of which Sedlock, the joint holder of the account, was given notice by the language of the bank protection statutes. Nor do the bank protection statutes authorize the bank to treat a joint account holder as an owner of the account for all purposes; the bank may do so only with respect to orders of payment from the account. R.C. 1107.08(A) (now 1109.07), 1151.19(A), and 1161.23(A)(1). Because Zierolf did not order payment from the account or pledge it as collateral, the bank protection statutes did not prevent Zierolf and Sedlock from presenting a "realities of ownership" defense to the bank's claimed right to setoff.

Citizens may have the right to set off Zierolf's debt against her interest in the CD, assuming that it can establish the other requirements for setoff, but its right to do so is limited by the extent to which Zierolf is an owner of the CD. Therefore, the trial court erred when it granted summary judgment for Citizens without allowing Zierolf and Sedlock to present evidence regarding their respective ownership interests in the joint account.

The second and third assignments of error are sustained.

"I. The trial court erred in granting plaintiff's motion for summary judgment since a genuine issue of material fact exists as to whether there was mutuality of obligation among Citizens, Zierolf, and Sedlock."

Zierolf and Sedlock claim that the trial court also erred when it granted summary judgment on the issue of whether mutuality of obligation existed.

The mutuality of obligation which must be shown to entitle a bank to a setoff must exist as between the bank and its customer. As the term implies, the bank must hold funds on behalf of the customer which it is obligated to pay to the customer, and the customer must be obligated in some way to the bank, such as through a promissory note. Mutuality of obligation does not require that each holder of a particular joint account be obligated to the bank before a customer's debt can be set off against that account, as Zierolf and Sedlock assert. The setoff amount is limited, however, to that portion of the joint account of which the customer is the owner, as discussed above.

A judgment had been entered finding that Zierolf was in default on the promissory note she delivered to Citizens, and Citizens had acknowledged its indebtedness on Zierolf's and Sedlock's CD. Under these circumstances, the trial court did not err in finding that there was no genuine issue of material fact regarding the mutuality of obligation between Zierolf and Citizens. Sedlock's alleged one hundred percent ownership of the funds to be used for setoff was irrelevant to the question of mutuality of obligation between Zierolf and Citizens, as the debtor's ownership of the funds used for setoff is a separate prong of the analysis.

Under this assignment of error, Zierolf and Sedlock also argue that the "hold" Citizens placed on the CD pursuant to its claimed right to setoff was not justified because it was not authorized under the terms of the CD and because Citizens did not have a valid security interest in the CD. This argument ignores the self-help nature of the right to setoff:

"Historically, the bank's right to setoff *** permits the bank by self-help to take priority over others claiming a right to the funds on deposit. Whereas, in the case of an ordinary debtor, setoff is available as an equitable and statutory

defense, in the case of a bank, setoff becomes a means by which the bank, because of its position as a commercial middleman, acquires a priority of right whenever it acts as creditor for a depositor." *Walter v. Natl. City Bank,* 42 Ohio St.2d at 526–527, 71 O.O.2d at 514–515, 330 N.E.2d at 427–428. Zierolf's and Sedlock's position that the bank was required to comply with all statutory provisions relative to security interests before effecting a hold or setoff would, in effect, eliminate the common-law right to setoff. The trial court did not err in refusing to impose such a requirement.

Moreover, the reasonableness of the hold is supported by the Supreme Court's decision in *Citizens Bank of Maryland v. Strumpf* (1995), 516 U.S. 16, 116 S.Ct. 286, 133 L.Ed.2d 258. Although *Strumpf* is factually distinguishable, the Supreme Court discussed therein the reasonableness of a bank's administrative hold on an account in which it had a right to setoff, noting that the bank's "temporary refusal to pay was neither a taking of possession of [the depositor's] property nor an exercising of control over it, but merely a refusal to perform its promise" while it sought judicial redress. *Id.* at 21, 116 S.Ct. at 290, 133 L.Ed.2d at 264. The same can be said under the facts of this case.

The first assignment of error is overruled.

The judgment of the trial court is reversed, and the matter is remanded for further proceedings.

*Judgment reversed*
*and cause remanded.*

FAIN and GRADY, JJ., concur.