INGRAM, Appellant,

v.

HOCKING VALLEY BANK et al., Appellees.

[Cite as *Ingram v. Hocking Valley Bank* (1997), 125 Ohio App.3d 210.]

Court of Appeals of Ohio,
Fourth District, Athens County.

No. 97 CA 7.

Decided Dec. 26, 1997.

*C. David Warren,* for appellant.

*Paul J. Gerig,* for appellee Hocking Valley Bank.

*Robert W. Stewart,* for appellee Grant Hospital.

*Michael S. Marlin, pro se.*

PETER B. ABELE, Judge.

This is an appeal from an Athens County Common Pleas Court summary judgment dismissing an action filed by Ted Ingram, plaintiff below and appellant herein, against Hocking Valley Bank, Grant Hospital, and Michael S. Marlin, defendants below and appellees herein.

Appellant assigns the following errors:

First Assignment of Error:

"The trial court erred in holding that a financial institution has no duty to determine the joint tenant's share of a joint account."

Second Assignment of Error:

"The trial court erred in holding that a financial institution has no duty to determine 'personal earnings' in an account prior to garnishment of a joint account."

Third Assignment of Error:

"The trial court erred in holding that the bank was not responsible to notify appellant of the garnishment."

Fourth Assignment of Error:

"The trial court erred in granting a motion for summary judgment where a genuine issue of material fact existed as to the malicious conduct of defendant Marlin."

Fifth Assignment of Error:

"The trial court erred in granting a motion for summary judgment against Grant Hospital where the hospital, through its counsel, trespassed upon the account of an innocent third party."

On March 25, 1996, appellant filed a complaint alleging that appellees had wrongfully attached funds that appellant had placed in two joint and survivorship accounts he shared with his wife. Appellant explained that between May 11, 1995, and June 1, 1995, he deposited a total of $1,850 and his wife deposited a total of $780 in their joint checking account at appellee Hocking Valley Bank. Appellant further explained that they maintained a joint savings account at the same bank with a balance of $154, which included $129 of his money and $25 of his wife's money.

The complaint alleged that after appellee Grant Hospital obtained a judgment against appellant's wife in the amount of $3,153.80, the hospital, through its attorney appellee Michael S. Marlin, attached funds that appellant and his wife had in the two accounts. Appellant claims that Hocking Valley Bank attached the funds pursuant to the order of garnishment despite the fact that the bank had notice that some of the money in the accounts belonged to appellant rather than to his wife. Appellant claims that appellees' acts constitute a trespass upon his account and conversion of his property. Appellant prayed for $25,000 plus punitive damages for appellees' willful and wanton disregard of his rights.

On April 19, 1996, Marlin filed an answer.[1] In the answer, Marlin admitted that appellant deposited a total of $1,850 in the joint checking account between May 11, 1995, and June 1, 1995. Marlin raised various defenses, including the following: (1) at the time of the attachments Marlin had no knowledge of any

---

1. Marlin also filed a third-party complaint in which he alleged that if he is liable, he is entitled to fifty-percent indemnification from his former law partner. The third-party complaint is not relevant to this appeal.

deposits appellant made to the accounts, (2) Marlin acted in compliance with R.C. 2716.13, and (3) the matter is *res judicata* by virtue of the garnishment proceedings against appellant's wife in *Grant Hosp. v. O'Nail,* Franklin C.P. No. 93JG–08–30424, unreported, 1997 WL 101657.

On April 22, 1996, Hocking Valley Bank filed an answer alleging that pursuant to the consumer account agreements signed by appellant and his wife when they opened the accounts, either one had the authority to withdraw money from the accounts. The bank further alleged that on or about June 1, 1995, the bank received the order of garnishment ordering "money, property or credits, other than personal earnings, of the indicated judgment debtor under his (her) control and in his (her) possession" to be remitted to the Franklin County Common Pleas Court. The bank explained that because appellant's wife had authority to withdraw all the funds from the accounts and thus those funds were under her control, the bank remitted all the funds in the accounts to the court pursuant to the order of garnishment. The bank raised various defenses, including the following: (1) R.C. 2716.13 gave appellant and his wife "a due process course of action to persuade the Court whether or not the subject garnishment was proper," (2) the order of garnishment required the bank to attach all the funds in the joint accounts, and (3) the instant action is *res judicata* due to the garnishment proceedings against appellant's wife in *Grant Hosp.*

On May 6, 1996, Grant Hospital filed an answer raising various defenses, including the following: (1) the instant action is *res judicata* due to the fact that appellant made himself a party to the garnishment proceedings against his wife in *Grant Hosp.* and (2) the order of garnishment authorized the removal of the funds from the accounts.

On October 21, 1996, appellant filed a motion for summary judgment and an attached memorandum.[2] In the memorandum, appellant explained that after he and his wife objected to the attachment of the funds, Franklin County Common Pleas Court referee Patrick E. Sheeran held a hearing on June 15, 1995 in *Grant Hosp.* Appellant further explained that at the hearing, the parties stipulated that appellant deposited $1,850 in the joint checking account between May 11, 1995, and June 1, 1995, and appellant's wife testified that all the money in the account was from personal earnings. Appellant argued that before

---

**2.** Appellant did not submit any Civ.R. 56(C) documentary evidence in support of his motion for summary judgment. Instead, appellant attached uncertified copies of the following documents from *Grant Hosp. v. O'Nail,* Franklin C.P. No. 93JG–08–30424, unreported, 1997 WL 101657, to his motion for summary judgment: (1) an order of garnishment, (2) a notice to judgment debtor, and (3) a partial transcript of the June 15, 1995 garnishment hearing before referee Patrick Sheeran. Those documents do not constitute documentary evidence admissible in a summary judgment proceeding held pursuant to Civ.R. 56(C).

responding to the order of garnishment, the bank had a duty to determine the net contributions that each party had made to the joint and survivorship accounts and the bank had a duty to determine whether any of the money in the accounts came from personal earnings of either party. Appellant cites *Gillota v. Gillota* (1983), 4 Ohio St.3d 222, 4 OBR 576, 448 N.E.2d 802, in support of his argument that the money in the accounts belongs to the parties in proportion to their net contributions to the accounts. Appellant cites R.C. 2329.66(A) and *Daugherty v. Cent. Trust Co.* (1986), 28 Ohio St.3d 441, 28 OBR 492, 504 N.E.2d 1100, in support of his argument that money from personal earnings is exempt from garnishment.

On October 21, 1996, Grant Hospital filed a motion for summary judgment, a memorandum in support, and an affidavit. In the affidavit, the hospital's corporate counsel stated that Marlin is employed through the Columbus Credit Bureau and further stated that the hospital did not instruct or authorize Marlin to attach appellant's assets. In a memorandum in support of the motion, the hospital argued that appellant was attempting to blame the hospital for actions of the other appellees. The hospital explained that its sole involvement in this matter is the fact that it turned over appellant's wife's unpaid account to the Columbus Credit Bureau for collection. The hospital noted that the complaint did not allege any wrongdoing on the part of the hospital.

On October 21, 1996, Marlin filed a motion for summary judgment, a memorandum in support, and an affidavit.[3] In the memorandum, Marlin argued that as an attorney, he is immune from liability to third persons arising from his performance as an attorney unless he acted maliciously. Marlin noted that because appellant did not allege that Marlin acted maliciously, the action against him should be dismissed. In the affidavit, Marlin stated that during his work on the garnishment case, he acted without malice or willful or wanton disregard of appellant's or his wife's rights. Marlin repeated these arguments in memoranda he filed on November 1, 1996, and November 27, 1996.

On October 25, 1996, Hocking Valley Bank filed a motion for summary judgment. In a memorandum in support of the motion, the bank argued that because appellant and his wife signed consumer account agreements which authorized either party to withdraw money from the joint accounts, both appellant and his wife had a present possessory interest in the entire accounts. The

---

3. Marlin also attached to his motion for summary judgment a letter to Grant Hospital regarding appellant's wife's account and uncertified copies of the following documents from *Grant Hosp.:* (1) an agreed entry, (2) a certificate of judgment, (3) an order of garnishment, (4) a notice to judgment debtor, and (5) a transcript of the June 15, 1995 garnishment hearing before referee Patrick Sheeran.

As the trial court noted, neither the letter nor the documents constitute documentary evidence admissible in a summary judgment proceeding held pursuant to Civ.R. 56(C).

order of garnishment, which arrived at the bank on June 1, 1995, required the bank to attach the "money, property or credit, other than personal earnings, of [appellant's wife] under [her] control and in [her] possession." Because the agreements signed by appellant and his wife gave both of them a possessory interest in the entire accounts, the bank determined that appellant's wife had possession of the money in the joint accounts. Accordingly, the bank attached the money in the joint accounts pursuant to the order of garnishment.

Hocking Valley Bank further argued that when it attached the money in the joint accounts, "it relied on the judicial notice and hearing remedies provided in R.C. 2716.13 to provide [appellant] with any necessary relief." The bank noted that appellant "voluntarily subscribed to the risk that his co-signor on the joint bank account could subject their shared funds to attachment" when appellant signed the consumer account agreements.

After noting that the Ohio legislature enacted R.C. 2716.13 to replace an earlier statute found unconstitutional due to its failure to provide sufficient notice and due process to garnishees, Hocking Valley Bank argued that courts should consider as intentional the legislature's omission from the new statute of a requirement to provide notice to joint owners of a judgment debtor's garnished bank account. In this regard, the bank cites *Lally v. Rane* (Dec. 9, 1992), Summit App. No. 15592, unreported, 1992 WL 368517, for the proposition that notice of garnishment need not be sent to a nondebtor who owns a joint account with a debtor even if all the funds in the joint account belong to the nondebtor. The court wrote that "nothing in [R.C. 2716.13] requires that the joint owner of an account be given notice of garnishment."

On November 15, 1996, appellant filed a memorandum in opposition to appellees' motions for summary judgment. In the memorandum, appellant conceded that he received notice of the garnishment and noted that he is "not arguing that he is entitled to notice" of the garnishment. In response to the bank's argument that appellant voluntarily subjected his funds to attachment when he placed them in the joint accounts, appellant once again cited *Gillota* for the proposition that the money in a joint account belongs to the account holders in proportion to their net contributions to the account. Appellant once again contended that before attaching a joint account in response to a garnishment order, a bank must determine the account holders' net contribution to a joint account. Appellant also once again argued that because his money came from personal earnings, R.C. 2329.66, *Daugherty,* and the terms of the order of garnishment exempted it from attachment. We note that appellant did not attach any Civ.R. 56(C) documentary evidence to his memorandum opposing appellees' motions for summary judgment.

In response to Marlin's and Grant Hospital's motions for summary judgment, appellant argued that they "primarily point fingers back and forth" at each other.

Appellant argued that Marlin acted willfully and wantonly by "issuing the attachment order and not immediately releasing the money after he discovered that it was personal earnings." Appellant further argued that because the hospital did not file a counterclaim against Marlin, we should assume that the hospital condoned all of Marlin's actions. Again, we note that appellant did not attach any Civ.R. 56(C) documentary evidence to his memorandum opposing appellees' motions for summary judgment.

On November 25, 1996, Hocking Valley Bank responded to appellant's motion for summary judgment. In its response, the bank repeated the arguments it raised in its motion for summary judgment and raised additional arguments, including the following: (1) in order to determine appellant's and his wife's proportionate shares of the joint accounts, the bank would have to trace the deposits and withdrawals in the accounts back to the creation of the accounts, not merely back twenty days from June 1, 1995, to May 11, 1995 as appellant contends; (2) although a footnote in *Daugherty* suggested that tracing of money in a joint account may be required, the footnote did not specify whether a bank or a court should do the tracing; (3) tracing is a judicial function that should not be relinquished to banks; (4) banks lack ready access to the microfilm records necessary to determine which party to a joint account wrote which check to the account; (5) banks lack the information necessary to determine which deposits came from personal earnings; (6) R.C. 2716.12 provides only a one dollar fee to a bank for complying with a garnishment order; (7) the garnishment statute, R.C. 2716.13, provides appellant with a remedy for obtaining any funds he believes to have been improperly garnished. In an affidavit attached to the bank's responsive memorandum, the bank's vice-president and cashier stated that the bank lacks ready access to the microfilm records necessary to determine which party to a joint account wrote which check to the account and the bank lacks information necessary to determine which deposits came from personal earnings.

On January 27, 1997, the trial court issued three decisions denying appellant's motion for summary judgment and granting appellees' motions for summary judgment.

Appellant filed a timely notice of appeal.

I

In his first assignment of error, appellant asserts that the trial court erred by holding that a financial institution has no duty to determine the amount of a joint tenant's share of a joint account.

Summary judgment is appropriate when the movant demonstrates that (1) there is no genuine issue of material fact, (2) the moving party is entitled to

judgment as a matter of law, and (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence construed most strongly in his favor. *Turner v. Turner* (1993), 67 Ohio St.3d 337, 339–340, 617 N.E.2d 1123, 1126; *Bostic v. Connor* (1988), 37 Ohio St.3d 144, 146, 524 N.E.2d 881, 883–884; *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66, 375 N.E.2d 46, 47. The moving party bears the burden of proving that no genuine issue of material fact exists. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 662 N.E.2d 264; *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 115, 526 N.E.2d 798, 801.

When reviewing a summary judgment, an appellate court must independently review the record to determine if summary judgment was appropriate. An appellate court need not defer to the trial court's decision in summary judgment cases. See *Morehead v. Conley* (1991), 75 Ohio App.3d 409, 599 N.E.2d 786.

In this assignment of error, appellant does not contend that a genuine issue of material fact exists. Instead, appellant challenges the trial court's legal conclusion that a bank has no duty to determine the amount of a joint tenant's share of a joint account. In support of this assignment of error, appellant restates all the arguments he raised on this issue during the summary judgment proceedings below.

 We agree with the trial court that a bank has no duty to determine the amount of a joint tenant's share of a joint account. Joint tenants typically each have the right to withdraw all the funds from an account. Appellant and his wife, when they opened the joint checking account and joint savings account, gave each other the right to withdraw all the funds from the accounts. The order of garnishment directed the bank to remit to the Franklin County Common Pleas Court "money, property or credits, other than personal earnings, of the indicated judgment debtor *under his (her) control* and in his (her) possession." (Emphasis added.) Because appellant's wife had authority to withdraw all the funds from the accounts and thus those funds were under her control, the bank remitted the funds in the accounts.

 We find that the bank acted properly in this regard. In *Goralsky v. Taylor* (1991), 59 Ohio St.3d 197, 571 N.E.2d 720, the court noted as follows that a garnishment action against a bank attaches not the debtor's funds, but instead attaches the debtor's right to receive funds from the bank:

"[W]here the depositor is a judgment debtor and the bank is a garnishee, the property being garnished is, strictly speaking, not the funds themselves, but the debtor's contractual right to receive them." *Id.* at 198, 571 N.E.2d at 722.

Using that reasoning, the *Goralsky* court held as follows that a bank need not disclose the existence of a trust account held for the benefit of the debtor if the debtor had no contractual right to receive the money:

"[U]nder R.C. 2716.21(B), a garnishee bank is not required to disclose the existence of a trust account established for the benefit of the judgment debtor where the debtor is not a depositor or otherwise able to demand payment of the sum deposited." *Id.*

Thus, a bank responding to an order of garnishment must determine whether the debtor has a right to receive the funds in a joint account. If the debtor has a right to receive the funds, the bank must remit the funds. If the debtor does not have the right to receive the funds, even if the funds are held for the benefit of the debtor, then the bank must not remit the funds.

In *Toledo Trust Co. v. Niedzwiecki* (1993), 89 Ohio App.3d 754, 627 N.E.2d 616, the court, following the *Goralsky* logic, held that a debtor's certificate of deposit may not be garnished during the period of time that the certificate is pledged as collateral on a loan. The court reasoned that because the debtor had no right to demand the certificate during the pledge period, the certificate could not be garnished during that period.

In *Lally v. Rane* (Dec. 9, 1992), Summit App. No. 15592, unreported, 1992 WL 368517, the court similarly followed the *Goralsky* logic. The *Lally* court held that a bank need not determine the ownership interests of each joint account holder before complying with an order of garnishment against one of the account holders:

"In a joint and survivorship account, the parties are rebuttably presumed to share equally in the funds on deposit. *Vetter v. Hampton* (1978), 54 Ohio St.2d 227 [8 O.O.3d 198], 375 N.E.2d 804, paragraph six of the syllabus.

"By the terms of the agreement between First National and Nemer and Lally, the account was a joint and survivorship account, payable to either. Each of the individuals on the account transferred to the other a present interest in the existing account and all additions thereto. The trial court found that the bank had no knowledge of the actual ownership of the funds in the account. Given that the account was joint and that either party could withdraw the entire balance, we agree with the trial court that the account could be garnished by Nemer's creditor. See *id.; Ross v. Thrift S. & L. Co.* (1989), 60 Ohio App.3d 94, 96, 573 N.E.2d 788 [790]."

Thus, the court reasoned that because either joint account holder could withdraw the entire balance in the account, the entire balance could be garnished by the creditor of one of the account holders.

The bank protection statutes, R.C. 2716.21(B), 2716.21(D), and 2716.13(B), release banks from liability for payments made under the direction of one holder of a joint account. In *Citizens Fed. Bank, FSB v. Zierolf* (1997), 119 Ohio App.3d 46, 694 N.E.2d 496, the court commented on the rationale of the bank protection statutes as follows:

"[W]hen a joint account holder disposes of the money in an account in accordance with the terms of the joint account, the bank is not obligated to inquire into the actual ownership of the funds. Rather, the joint account holders must resolve among themselves any dispute they have as to the particular joint account holder's right to order payment of the funds. The bank's involvement in the transaction is not a consideration." *Id.* at 50, 694 N.E.2d at 499.

Thus, the bank-protection statutes relieve banks of the obligation of inquiring into the actual ownership of a joint account. The statutes place the burden of resolving ownership disputes on the joint account holders themselves.

We acknowledge that in *Citizens Fed. Bank* the court refused to expand the bank-protection statutes to permit banks to treat one joint owner as the owner of the entire joint account for purposes of setting off a loan made by the bank to that one joint owner.[4] When reasoning that the bank-protection statutes do not immunize banks from their own setoff actions, however, the court reiterated that the bank protection statutes protect banks from liability for following orders of payment. The court wrote:

"The risk that the bank would appropriate the account was not a risk of which Sedlock, the joint holder of the account, was given notice by the language of the bank protection statutes. Nor do the bank protection statutes authorize the bank to treat a joint account holder as an owner of the account for all purposes; *the bank may do so only with respect to orders of payment from the account.* R.C. 1107.08(A), R.C. 1151.19(A); and R.C. 1161.23(A)(1)." (Emphasis added.) *Id.,* 119 Ohio App.3d at 50, 694 N.E.2d at 499.

Thus, the bank protection statutes protect banks from liability with respect to orders of payment from joint accounts.

In *Wilhelm v. Peoples Fed. S.&L. Assn.* (1991), 72 Ohio App.3d 258, 594 N.E.2d 635, the court held that the bank-protection statutes protect banks from liability for pledges of joint accounts made by less than all the account holders. The court reasoned that the statutes do not distinguish between withdrawals made from joint accounts and pledges made of joint accounts. The bank protection

---

4. See *Maines Paper & Food Service–Midwest, Inc. v. Regal Foods, Inc.* (1995), 100 Ohio App.3d 454, 654 N.E.2d 355, in which the court reviewed the right of a bank to set off funds from an account. In that case, the court held that Ohio law permits banks to set off funds before paying a garnisher.

statutes protect banks from liability with respect to orders of payment, including withdrawals and pledges.

In the case *sub judice,* we find that the order of garnishment constitutes an order of payment from appellant and his wife's joint account. If appellant's wife had written her creditor a check drawn on the joint checking account, the bank would have been required to pay the creditor without regard to appellant's interest in the joint account. If appellant's wife had pledged money in the joint accounts to the creditor, the bank would have been required to pay the creditor without regard to appellant's interest in the account. The order of garnishment similarly directs money from the joint account to the creditor.

R.C. 2716.21(D) and 2716.13(B) required the bank to comply with the order of garnishment. Appellant's wife had a right to request a hearing in the garnishment action. R.C. 2716.13(C). The garnishment hearing is the debtor's opportunity to present evidence that other people own funds in the account. See *Gen. Motors Acceptance Corp. v. Deskins* (1984), 16 Ohio App.3d 132, 16 OBR 140, 474 N.E.2d 1207.

In *Grant Hosp. v. O'Nail* (Mar. 4, 1997), Franklin App. No. 96APE06–793, unreported, 1997 WL 101657, the court noted that appellant's wife did, in fact, request a garnishment hearing. At the hearing, appellant's wife did assert the defense that appellant owned some of the funds in the account. The trial court in that case agreed with appellant's wife and ordered appellant's funds returned to his wife. The appellate court described the trial court's order to return the funds and noted that the bank did not appeal that order:

"From those calculations, the referee recommended appellee be allowed to garnish $397.71 from the joint checking account and $25 from the joint savings account, with the balance of the originally garnished funds, totalling $1,072.29, to be returned to appellant as the property of her husband.

"* * *

"As a preliminary matter, despite appellee's implication that it is entitled to garnish the earnings of appellant's nusband once those were deposited into the joint accounts at issue, appellee has not filed a cross-appeal on that issue. Hence we do not review the propriety of the trial court's January 3, 1996 judgment approving the return of $1,072.29 to appellant as the property of her husband."

Thus, not only did appellant's wife, as the judgment debtor, have the right to request a hearing and present evidence that appellant owned funds in the joint accounts, but appellant's wife exercised that right and the court apparently looked favorably upon her evidence.

Appellant, as a joint account holder, assumed the risk that his wife would withdraw his money from the account and assumed the risk that his wife would

pledge his money in the account. Appellant similarly assumed the risk that his wife would have unpaid bills that her creditors would satisfy by court action involving garnishment of funds in the account. Although appellant's wife requested a hearing and presented evidence in the garnishment action to prove that some of the funds in the joint accounts belonged to appellant, when appellant opened the joint accounts he assumed the risk that his wife might not request a hearing or present such evidence.

We agree with Justice Locher's assessment of the inherent and sometimes undisclosed risks of joint and survivorship accounts:

" 'This writer is cognizant that R.C. 1107.08 and 1151.19 make provision for joint and survivorship accounts. My personal observation is that these accounts are frequently litigated. It is thus apparent that there exists an abysmal flaw in their creation. All too frequently, the parties entering into this type of contractual agreement with banks or savings and loan institutions are not really apprised of all the ramifications that exist when such a contract is consummated. Often depositors are advised that these accounts are the best way to "avoid probate." Seldom, if ever, are the clerks in banks and savings and loan institutions attorneys or well versed in the legal aspects of this contract.' " *In re Estate of Thompson* (1981), 66 Ohio St.2d 433, 437, 20 O.O.3d 371, 374, 423 N.E.2d 90, 94, quoting Justice Locher's concurrence in *Vetter v. Hampton* (1978), 54 Ohio St.2d 227, 233–234, 8 O.O.3d 198, 202, 375 N.E.2d 804, 808.

Appellant's argument that banks should be required to determine what proportion of a joint account each holder owns would place an unreasonable and inappropriate burden upon Hocking Valley Bank. Banks should not be forced to perform the investigatory and judicial functions involved in determining what proportion of a joint account each holder owns. A bank's investigation of an account by necessity would extend far beyond the records in the bank's possession into the realities of ownership. A bank's determination of the precise ownership of an account would be the equivalent of a judicial determination. In *In re Estate of Thompson* (1981), 66 Ohio St.2d 433, 20 O.O.3d 371, 423 N.E.2d 90, paragraph one of the syllabus, the court adopted the Uniform Probate Code provision on the ownership of joint and survivorship accounts as follows:

"A joint and survivorship account belongs, during the lifetime of all parties, to the parties in proportion to the net contributions by each to the sums on deposit, *unless there is clear and convincing evidence of a different intent.*" (Emphasis added.) Accord *Gillota v. Gillota* (1983), 4 Ohio St.3d 222, 4 OBR 576, 448 N.E.2d 802.

In *Cork v. Bray* (1990), 52 Ohio St.3d 35, 555 N.E.2d 936, the court reiterated that the presumption of equal ownership of the funds on deposit may be rebutted by showing the realities of ownership. See, also, *Union Properties, Inc. v.*

*Cleveland Trust Co.* (1949), 152 Ohio St. 430, 434–435, 40 O.O. 425, 427–428, 89 N.E.2d 638, 641, in which the court stated that the "door should be opened to evidence" showing the realities of ownership.

Accordingly, based upon the foregoing reasons, we overrule appellant's first assignment of error.

## II

In his second assignment of error, appellant asserts that the trial court erred by holding that prior to garnishing a joint account, a bank has no duty to determine what percentage of the funds in the joint account constitute personal earnings.

In this assignment of error, appellant once again does not contend that a genuine issue of material fact exists. Instead, appellant challenges the trial court's legal conclusion that prior to garnishing a joint account, a bank has no duty to determine what percentage of the funds in the joint account constitute personal earnings. In support of this assignment of error, appellant restates all the arguments he raised on this issue during the summary judgment proceedings below.

■ We agree with appellant that personal earnings are exempt from garnishment. R.C. 2329.66(A)(13). We also agree with appellant that personal earnings maintain their exempt status even after being deposited into a checking account. *Daugherty v. Cent. Trust Co. of Northeastern Ohio* (1986), 28 Ohio St.3d 441, 28 OBR 492, 504 N.E.2d 1100.

■ We find, however, that for many of the reasons which led to our conclusion that banks have no duty to determine the ownership proportions in a joint account, banks similarly have no duty to determine what funds in an account came from personal earnings. Appellant's argument that banks should be required to determine what funds in an account came from personal earnings would place an unreasonable and inappropriate burden upon Hocking Valley Bank. Banks should not be forced to perform the investigatory and judicial functions involved in determining which deposits came from personal earnings. Other courts have recognized that personal-exemption determinations belong in court, not in a bank. In *Grant Hosp. v. O'Nail* (Mar. 4, 1997), Franklin App. No. 96APE06–793, unreported, 1997 WL 101657, the court remanded the case to the trial court for a personal-exemption determination as follows:

"Given the foregoing, on remand, trial court should first determine whether appellant's personal earnings may be exempt, despite being deposited in a personal checking account, because the 'source of funds is known or reasonably traceable.' *Daugherty*, at 445 [28 OBR at 496], 504 N.E.2d [at 1103]. Should the

court determine they may be exempt under *Daugherty*, the trial court should apply the pertinent provisions of R.C. 2329.66 to determine to what extent appellant's earnings are exempt from appellee's garnishment."

In *Daugherty*, the court noted that because the parties agreed what funds were exempt, the court did not need to make that determination. The implication in *Daugherty* is that if the parties did not agree, the court would have to make the determination.

At least one treatise on consumer law has recognized that the debtor carries the burden of proving a personal-earnings exemption "since in many cases the debtor alone may possess the facts necessary to prove the entitlement." Herdeg, Ohio Consumer Law (1989) 402, Section 31.03(B)(4).

Accordingly, based upon the foregoing reasons, we overrule appellant's second assignment of error.

## III

In his third assignment of error, appellant asserts that the trial court erred by holding that the bank was not required to notify appellant about the garnishment. In *Lally v. Rane* (Dec. 9, 1992), Summit App. No. 15592, unreported, 1992 WL 368517, the court rejected the argument that a nondebtor is entitled to notice of a garnishment of a joint account. The *Lally* court wrote as follows:

"We now address Lally's claim that he was entitled to notice of the garnishment. Under R.C. 2716.13 notice must be given to the judgment debtor. Nothing in that section requires that the joint owner of an account be given notice of the garnishment and Lally provides no authority supporting that position."

We agree with the Ninth District in *Lally* that no authority supports the position that a nondebtor is entitled to notice of a garnishment of a joint account.

Appellant attempts to distinguish *Lally* by arguing that he does not seek notice of the garnishment, but rather seeks notice of "any demand on the account made by a party other than the joint tenant." Appellant cites no authority for imposing such a duty upon banks. The only demand upon appellant's accounts was the order of garnishment. As the Ninth District held in *Lally*, a nondebtor is not entitled to notice of a garnishment.

Additionally, it appears that appellant waived this issue during the proceedings below. In his November 15, 1996 memorandum opposing appellees' motions for summary judgment, appellant conceded that he received notice of the garnishment and noted that he was "not arguing that he is entitled to notice" of the garnishment.

Accordingly, based upon the foregoing reasons, we overrule appellant's third assignment of error.

## IV

In his fourth assignment of error, appellant asserts that the trial court erred by granting Marlin's motion for summary judgment when a genuine issue of material fact existed concerning whether Marlin acted maliciously.

■ The parties appear to agree that if Marlin acted without malice, he is not liable. In *Scholler v. Scholler* (1984), 10 Ohio St.3d 98, 10 OBR 426, 462 N.E.2d 158, syllabus, the court held that attorneys are immune from liability to third parties unless they acted with malice:

"An attorney is immune from liability to third persons arising from his performance as an attorney in good faith on behalf of, and with the knowledge of his client, unless such third person is in privity with the client or the attorney acts maliciously." See, also, *DiPaolo v. DeVictor* (1988), 51 Ohio App.3d 166, 555 N.E.2d 969.

■ As the trial court noted when responding to Marlin's motion for summary judgment, appellant failed to submit documentary evidence to counter Marlin's affidavit stating that he acted without malice. Civ.R. 56(E) provides that a party defending against a motion for summary judgment may not rest upon mere allegations in the pleadings and memoranda, but must present documentary evidence setting forth specific facts to show there is a genuine issue of material fact for trial. In *Hoffman v. Davidson* (1987), 31 Ohio St.3d 60, 31 OBR 165, 508 N.E.2d 958, the court followed Civ.R. 56(E) and emphasized that the nonmoving party has the burden of producing documentary evidence to demonstrate that a genuine issue of material fact exists.

In conclusion, because the documentary evidence submitted by the parties fails to raise a genuine issue of fact concerning whether Marlin acted with malice, the trial court properly granted Marlin's motion for summary judgment.

More important, because we find no merit in appellant's underlying objections regarding the garnishment of the accounts, appellant has no cognizable claim against Marlin.

Accordingly, based upon the foregoing reasons, we overrule appellant's fourth assignment of error.

## V

In his fifth assignment of error, appellant asserts that Grant Hospital trespassed upon his account and therefore the trial court erred by granting Grant Hospital's motion for summary judgment.

As we discussed under appellant's first and second assignments of error, Hocking Valley Bank had no duty to determine the amount of a joint tenant's share of a joint account and had no duty to determine what percentage of the funds in the joint account constitute personal earnings. When garnishing appellant's accounts, the bank and the hospital were engaging in usual and customary debt-collection procedures authorized by statute. For that reason, we find that the trial court properly granted the hospital's motion for summary judgment.

Accordingly, based upon the foregoing reasons, we overrule appellant's fifth assignment of error.

*Judgment affirmed.*

STEPHENSON, P.J., concurs.

HARSHA, J., concurs in judgment only.