SMALTZ, Appellant,

v.

NATIONAL CITY BANK, N.E., Appellee.

[Cite as *Smaltz v. Natl. City Bank, N.E.* (2000), 136 Ohio App.3d 203.]

Court of Appeals of Ohio,
Seventh District, Mahoning County.

No. 97 C.A. 154.

Decided Feb. 8, 2000.

*James H. Beck,* for appellant.

*Richard N. Selby,* for appellee.

Cox, Presiding Judge.

This matter presents a timely appeal from a decision rendered by the Mahoning County Common Pleas Court, overruling the objection to the magistrate's decision filed by plaintiff-appellant, Joseph M. Smaltz, and thereby dismissing appellant's complaint against defendant-appellee, National City Bank, N.E.

On November 13, 1989, appellant purchased a certificate of deposit from the McKinley Bank in the amount of $20,000. On December 28, 1989, appellant purchased an additional certificate of deposit from McKinley Bank in the amount of $5,000. On both occasions, appellant took his son, Kenneth Smaltz, with him because he was elderly and required financial advice. Both certificates of deposit were purchased with funds provided entirely by appellant; however, he made them payable to "Joseph M. Smaltz or Kenneth Smaltz or Joseph G. Smaltz." Appellant made the sole decision to purchase certificates of deposit rather than some other type of investment or deposit. No representative from the McKinley Bank suggested to appellant what he should buy, how to invest his money, or how his investment should be held or titled.

The reverse sides of the signature cards for the certificates of deposit in question contained language concerning the joint and survivorship features of appellant's investment. Both signature cards also set forth, immediately below the signature lines, the directive: "SEE REVERSE SIDE PRIOR TO SIGN-ING." The reverse side of the signature cards contained the following relevant provisions, in infinitesimal size print:

" * * * Additionally, for this type of account ownership, it is *agreed by us with each other and the Institution* that any funds placed in or added to the account by any one of us are and shall be conclusively intended to be a gift and delivery at that time of such funds to the other signatory party or parties to the extent of his or their pro rata interest in the account.

" * * *

"A security interest upon any balance in this account is hereby granted *to the Institution* to secure the payment of any indebtedness of any individual depositor or any one or more of the joint depositors *to the Institution*, whether direct or indirect, whether due or to become due, and right is conferred upon *the Institution* to offset any such balance against any such indebtedness." (Emphasis added.)

Appellant admittedly failed to read the reverse side of the signature cards. The bank representative merely told appellant where to sign and did not call his attention to the existence of the reverse side of the signature cards, nor did she explain the provisions regarding this particular type of investment to him in any way. As the certificates of deposit in question matured, they were not redeemed, but, rather, were simply rolled over on each occasion.

After 1989 and before August 1991, the Dollar Savings and Trust Company (hereinafter referred to as "Dollar") acquired all of the assets and liabilities of the McKinley Bank. Included in the acquisition were the certificates of deposit in question issued by the McKinley Bank. There was no evidence presented in this

case to indicate that Dollar ever notified its certificate of deposit owners that the setoff provisions in their contracts with McKinley Bank could and would be applied to obligations which one joint owner might have on a loan from Dollar.

Appellant's son, Joseph G. Smaltz, through his association with a company known as Talleyrand, Inc., became obligated to Dollar on various loans as a co-obligor and/or guarantor. Joseph G. Smaltz and Talleyrand, Inc. thereafter defaulted on their obligations to Dollar, and Talleyrand, Inc. went bankrupt.

Subsequently, on or about August 15, 1991, Dollar exercised the right of setoff and closed the certificates of deposit in question, applying the total value of $26,531.53 toward Joseph G. Smaltz's obligation to Dollar. After receiving notice of the setoff by way of correspondence from Dollar, appellant attempted to redeem the certificates of deposit at issue. Dollar and later appellee, which thereafter acquired Dollar, refused to redeem the certificates of deposit and stood upon the right to set off the funds.

Appellant, along with his son, Joseph G. Smaltz, then filed a complaint against appellee, as successor-in-interest to Dollar and the McKinley Bank. As the claims of appellant and Joseph G. Smaltz were based upon two separate causes of action, the trial court bifurcated the case. Appellant alleged that there was no mutuality of obligation at the time of the setoff by appellee, thereby constituting a conversion of his funds. Appellant further alleged that appellee breached its contractual obligations to him. Following discovery, a hearing was held before the court magistrate on March 4, 1997 with regards to appellant's claims. The magistrate's decision, filed April 15, 1997, held that when a setoff provision is expressly set forth in a contract, the provision is binding upon the parties and is enforceable, even when corporate entities merge. The magistrate therefore dismissed appellant's claims against appellee with prejudice. Appellant filed an objection to the magistrate's decision and, after due consideration, the trial court overruled appellant's objection. This appeal followed.

Appellant presents two assignments of error on appeal that will be considered together and allege as follows:

"The Trial Court erred in finding that there was a contractual relationship created by the signatures on the signature card between McKinley and Plaintiff. P. 4, the Magistrate's Decision.

"The Trial Court erred in failing to enforce the clear mandate of *ORC* § 1107.06 that requires a copy of the rules and regulations of the bank to be given to the depositor. Not cited in Magistrate's Decision."

Appellant argues that a binding contract was not created in this case, since he did not read and was not informed of the provisions contained on the reverse sides of the signature cards. Therefore, appellant maintains that the trial court could not have found that a binding contract ultimately existed because he did not

know nor would he have reason to know that the provisions in question could be enforced against him by Dollar. Appellant believes that *Rives v. Krupzsield* (1989), 60 Ohio App.3d 97, 573 N.E.2d 1199, presents controlling authority.

Relying on former R.C. 1107.06, appellant also argues that the law imposes a duty on banks to provide depositors with a copy of its rules and regulations. Appellant submits that the rules as stated on the back of the signature card were insufficient to comply with the applicable law.

In *Chickerneo v. Soc. Natl. Bank* (1979), 58 Ohio St.2d 315, 12 O.O.3d 298, 390 N.E.2d 1183, the Ohio Supreme Court held that the creation of a joint and survivorship account constitutes a contractual agreement. Further, a contract should be interpreted by its plain meaning even if one of the parties has failed to read the contract. *Seringetti Constr. Co. v. Cincinnati* (1988), 51 Ohio App.3d 1, 553 N.E.2d 1371.

In its final summation, the court in *Rives* stated, 60 Ohio App.3d at 98, 573 N.E.2d at 1201:

"While *Chickerneo* may be sound, when the depositor's knowledge and voluntariness are placed into question, it does not serve to relieve the bank, with its *vastly superior knowledge and bargaining position of any and all responsibility to show that it provided the depositor with a reasonable means of understanding the consequences of the contract that is being entered into by signing the card* and receiving the brochure which the bank has prepared and provided." (Emphasis added.)

In *Rives,* the court determined that the bank unlawfully set off the depositor's funds because there was no meeting of minds at the time the account was opened that could establish a contractual right of the bank.

The material fact which separated *Rives* from *Chickerneo* was that in *Chickerneo,* the depositor specifically asked for the instrument that he received. In *Rives,* an elderly depositor told the bank that she wanted an account from which her son could withdraw money in case of emergency. The bank officer suggested that the depositor obtain a joint and survivorship account and the depositor then signed a signature card, without reading the rules or having the rules explained to her. *Rives* provides that in instances where the original depositor knowingly selects the type of account, then *Chickerneo* would be controlling.

Although appellant acknowledged that it was his intention to purchase a certificate of deposit on each occasion before entering McKinley Bank, as was the situation where the depositor opened a savings account in *Chickerneo,* the case at bar is factually distinguishable from *Chickerneo* in that appellant did not secure the signature of his son, Joseph G. Smaltz, on the required signature card and return it to the financial institution, as did the depositor in *Chickerneo.* That fact became critical to this case, as there was a question as to whether Joseph G.

Smaltz was even a signatory on the certificate of deposit accounts at the time of setoff, which question was not clearly answered in the affirmative.

■ Furthermore, while this court agrees that a valid contract was created between appellant and McKinley Bank by virtue of the establishment of a joint and survivorship account, we do not find that the contract extended to Dollar and subsequently appellee, as successors in interest, absent assignment language or proof of mutuality of obligation.

■ The Ohio Supreme Court in *Chickerneo* recognized that mutuality of obligation is essential to establishing a valid setoff. Thereafter, the court in *Citizens Fed. Bank, F.S.B. v. Zierolf* (1997), 119 Ohio App.3d 46, 49, 694 N.E.2d 496, 498 explained:

"[T]hree conditions must be satisfied before a bank may set off a customer's deposits against his indebtedness to the bank: (1) the existence of mutuality of obligation, (2) the debtor's ownership of the funds used for setoff, and (3) the ripeness of the existing indebtedness for collection at the time of the setoff."

Arguably, it can be said that appellant's son, Joseph G. Smaltz, defaulted on his loan obligations with Dollar and his indebtedness was ripe for collection, thereby satisfying the third requirement for a valid setoff. However, we do not find that the first and second requirements enumerated in *Citizens Fed. Bank* were met in this case.

In order for mutuality of obligation to exist, "the bank must hold funds on behalf of the customer which it is obligated to pay to the customer, and the customer must be obligated in some way to the bank, such as through a promissory note. Mutuality of obligation does not require that each holder of a particular joint account be obligated to the bank before a customer's debt can be set off against that account * * *. The setoff amount is limited, however, to that portion of the joint account of which the customer is the owner * * *." *Citizens Fed. Bank, supra,* at 51, 694 N.E.2d at 499.

In examining the terms and conditions set forth in the provisions upon which Dollar, and subsequently appellee, relied in effecting a setoff against appellant's certificates of deposit, it is clear from their plain meaning that repeated mention of "the Institution" referred to McKinley Bank. Therefore, the rules and regulations set forth on the reverse side of the signature cards in this matter were those only of McKinley Bank. These rules and regulations do not contain any terms concerning assignment, which would allow a successor in interest, such as Dollar or appellee, to subsequently adopt the rules and regulations of McKinley Bank as their own.

Appellant contends that the rules and regulations set forth on the reverse side of the signature cards were not in sufficient conformance with former R.C. 1107.06. Although former R.C. 1107.06(C) provided that a statement of the

financial institution's rules and regulations may be stated on the depositor's signature card, the evidence presented established that only McKinley Bank was in compliance with the statute, absent valid assignment language contained within the rules and regulations. In fact, as the court magistrate appropriately noted, there was no testimony offered in this case to indicate that upon acquiring McKinley Bank, Dollar ever sent notification to McKinley Bank's customers to inform them that the setoff provisions contained in their contracts with McKinley Bank could and would be applied to obligations which one joint owner might have on a loan with Dollar.

Furthermore, there was uncontroverted testimony offered before the court magistrate to establish the fact that appellant's son, Joseph G. Smaltz, did not have any outstanding financial obligations with McKinley Bank either before or after appellant opened the certificates of deposit in question. Inasmuch as appellant chose to transact his financial business with McKinley Bank, he would have no reason to know or inquire as to the status of his son's financial obligations with Dollar. We also find that appellant would likewise have no reason to know that the provisions regarding setoff contained within McKinley Bank's rules and regulations could be enforced against him by Dollar based upon the plain meaning of the terms contained within the rules and regulations.

Additionally, the evidence offered in the case at bar established the existence of two signature cards with regard to the certificates of deposit in question. One card contained the signatures of appellant and his son, Kenneth Smaltz. The other card contained the signatures of appellant, Kenneth Smaltz, and appellant's second son, Joseph G. Smaltz. When appellee's sole witness, who was employed by both Dollar and appellee, was asked which signature card came first, he could not affirmatively answer the question. Instead, he proceeded to explain the procedures followed by Dollar and appellee in removing a name from an account and stated that he was unaware of the procedures followed by McKinley. It was thereby unknown whether Joseph G. Smaltz had actually been removed from the accounts prior to Dollar's acquisition of McKinley Bank.

Appellee's witness further explained that the computer system utilized by Dollar and appellee was incapable of producing a record which would show more than two names on any account, even though additional individuals might be listed on an account. Therefore, no testimony was offered to confirm that the signature card bearing the signatures of appellant, Kenneth Smaltz, *and* Joseph G. Smaltz was the one which was valid at the time of the setoff against appellant's certificates of deposit. Without that testimony, it cannot affirmatively be said that appellant's son, Joseph G. Smaltz, was a signatory on or had any interest in the certificates of deposit in question at the time Dollar exercised its purported right of setoff against same. Hence, no mutuality of obligation existed in this case to establish a valid setoff.

Finally, all parties in this matter agree that the funds used to open the certificates of deposit in question were exclusively those of appellant. Given the fact that it could not be established that the signature of Joseph G. Smaltz even existed on the signature cards for the certificates of deposit at the time of setoff, there was likewise no manner in which to determine the portion of the certificates of deposit for which Joseph G. Smaltz may have been an owner. Consequently, the second requirement enumerated in *Citizens Fed. Bank* concerning the debtor's ownership of the funds used for set off, was not satisfied in the case at bar.

Dollar, and subsequently appellee, had vastly superior knowledge and was in a better bargaining position than appellant. As such, Dollar, and subsequently appellee, had an obligation to provide appellant with a reasonable means of understanding the consequences of his agreement with the financial institution in continuing to maintain his certificates of deposit. See, generally, *Rives, supra,* 60 Ohio App.3d at 98, 573 N.E.2d at 1200–1201.

In summation, based upon the evidence and testimony provided before the court magistrate in this case, we find that appellant's arguments on appeal are well taken. The contract which appellant established with McKinley Bank upon executing the signature cards for the certificates of deposit in question did not extend to Dollar or appellee once McKinley Bank was acquired by Dollar, absent the appropriate assignment language contained within McKinley Bank's rules and regulations. Furthermore, there was no valid confirmation that the signature of appellant's son, Joseph G. Smaltz, remained on the signature cards for the certificates of deposit at the time of setoff. Additionally, neither Dollar nor appellee provided appellant with notice that it would be their intention to adopt and enforce the rules and regulations regarding setoff that was established by McKinley Bank. Finally, neither mutuality of obligation nor an identification of the debtor's ownership of the funds used for setoff was satisfied in this case to establish a valid setoff in accordance with the dictates of *Citizens Fed. Bank.*

The court magistrate erred in dismissing appellant's claims against appellee with prejudice, and the trial court thereafter erred in overruling appellant's objection to the magistrate's decision.

The judgment of the trial court is reversed, and this cause is remanded for further proceedings according to law and consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

VUKOVICH and WAITE, JJ., concur.