IN RE ESTATE OF THOMPSON: THOMPSON, APPELLEE, v. BOTTS, EXRX., APPELLANT.

(No. 80-860—Decided June 17, 1981.)

434

*Mr. John C. Wheatley* and *Mr. Edward W. Erfurt, Jr.,* for appellee.

*Kemp, Schaeffer & Rowe Co., L.P.A.,* and *Mr. Stephen D. Rowe,* for appellant.

CELEBREZZE, C. J. This court has traditionally utilized contract law concepts to enforce the survivorship rights of the parties to accounts on deposit in financial institutions which are designated as joint and survivorship accounts. In *Berberick* v. *Courtade* (1940), 137 Ohio St. 297, this court stated, at page 301, quoting from paragraph two of the syllabus of *In re Estate of Hutchison* (1929), 120 Ohio St. 542:

" 'While joint tenancy with the incidental right of survivorship does not exist in Ohio parties may nevertheless contract for a joint ownership with the right of survivorship and at the death of one of the joint owners the survivor succeeds to the title to the entire interest, not upon the principle of survivorship as an incident to the joint tenancy but by the operative provisions of the contract.' "

In *Union Properties* v. *Cleveland Trust Co.* (1949), 152 Ohio St. 430, this court stated, at page 433:

"In the case of *Cleveland Trust Co.* v. *Scobie, Admr.,* 114 Ohio St., 241, 151 N.E., 373, 48 A.L.R., 182, this court laid down the rule, since adhered to in principle, that where one opens a savings account in a bank to the joint credit of himself and another, payable to either or the survivor, and it is appar-

ent that the depositor intended to transfer to the person, to whom he made the account jointly payable, a present joint interest therein equal to his own, the person to whom the account is made jointly payable is entitled to the balance of the money in the account upon the death of the depositor as against the claim thereto of the depositor's personal representative."

Because both a survivorship interest and a present joint interest are created by contract, we have held that the property can be transferred at one of the party's death even though the formal requisites of a will are not present.

Joint and survivorship accounts, however, are frequently utilized without their legal ramifications being fully understood by their creators. As a result, this court has held that the creation of such accounts raises a rebuttable presumption that the parties to the account share equally in the ownership of the funds on deposit, allowing the presumption to be rebutted by a showing of the "realities of ownership." *Vetter* v. *Hampton* (1978), 54 Ohio St. 2d 227; *Steinhauser* v. *Repko* (1972), 30 Ohio St. 2d 262; *Union Properties* v. *Cleveland Trust Co.,* *supra.*

The case at bar illustrates a common problem with this approach. The primary and foremost contributions made to the accounts were by Richard Thompson. When he created the accounts, he intended to maintain control over them during his lifetime; however, he also intended to create a survivorship interest in them. Under a strict contractual analysis, he could not do both.

R. C. 1107.08(A) states:

"When a deposit is made in the name of two or more persons, payable to either, or the survivor, such deposit or any part thereof, or any interest thereon, may be paid to either of said persons, or the guardian of his estate, whether the other is living or not, and the receipt or acquittance of the person paid is a sufficient release and discharge of the bank for any payments so made."

R. C. 1151.19(A) states in part:

"A building and loan association may receive money on deposit or stock deposits from any persons, firms, corporations, and courts, or their agents, officers, and appointees and

may pay interest thereon. When such deposits are made to the joint account of two or more persons, whether adults or minors, with a joint order to the association that such deposits or any part thereof are to be payable on the order of any of such joint depositors, and to continue to be so payable notwithstanding the death or incapacity of one or more of the persons making them, such account shall be payable to any of such survivors or order notwithstanding such death or incapacity. No recovery shall be had against such association for amounts so paid and charged to such account."

In the past this court has held that these sections and their predecessors were enacted solely for the benefit and protection of financial institutions and did not affect the relationships of the parties to joint and survivorship accounts nor authorize use of such accounts to transfer property. *Fecteau* v. *Cleveland Trust Co.* (1960), 171 Ohio St. 121; *Union Properties* v. *Cleveland Trust Co., supra.*

These sections authorizing financial institutions to create and make payments on joint and survivorship accounts implicitly permit use of such accounts to transfer property at death even though such transfers are not pursuant to a testamentary disposition. Because these statutes authorize the use of such accounts, it is not necessary to utilize the rigid contractual analysis of our earlier cases. Instead, our goal should be to effectuate the intent of the party or parties creating such accounts.

In order to do so, we must first realize that such accounts are not necessarily the most desirable means of effectuating intent. Justice Locher recognized this in his concurrence in *Vetter* v. *Hampton, supra,* when he stated, at pages 233, 234:

"This writer is cognizant that R. C. 1107.08 and 1151.19 make provision for joint and survivorship accounts. My personal observation is that these accounts are frequently litigated. It is thus apparent that there exists an abysmal flaw in their creation. All too frequently, the parties entering into this type of contractual agreement with banks or savings and loan associations are not *really* apprised of all the ramifications that exist when such a contract is consummated. Often depositors are advised that these accounts are the best way to 'avoid probate.' Seldom, if ever, are the clerks in banks and

savings and loan associations attorneys or well versed in the legal aspects of this contract. Thus, the end result, in numerous instances, is a defective estate plan that successfully avoids probate at the cost of litigation, great expense, disruption of the deceased's intention and hardship to his family. [Emphasis *sic.*]

"The defect is obvious. Being a modern-day creation of legislation, the joint and survivorship account is, in essence, a substitute testamentary disposition stripped of all its normal safeguards. * * *"

Use of a rebuttable presumption offers a means by which the relationships of the parties to joint and survivorship accounts can be stabilized. To a certain extent, our earlier case law has done this, but because the presumption used failed to distinguish between the treatment of such accounts during the parties' lifetimes and the treatment of such accounts after the death of a party, the effort to effectuate intent was not entirely successful.

Any presumption made must reflect the intent of the average creator of joint and survivorship accounts. As stated, at page 59, in *Abdoney* v. *Bd. of Liquor Control* (1955), 101 Ohio App. 57:

"Presumptions conform to the commonly accepted experiences of mankind and the inferences which reasonable men would draw from such experiences."

Section 6-103(a) of the Uniform Probate Code states:

"A joint account belongs during the lifetime of all parties, to the parties in proportion to the net contributions by each to the sums on deposit, unless there is clear and convincing evidence of a different intent."

Section 6-104(a) of that Code states:

"Sums remaining on deposit at the death of a party to a joint account belong to the surviving party or parties as against the estate of the decedent unless there is clear and convincing evidence of a different intention at the time the account is created. If there are two or more surviving parties, their respective ownerships during lifetime shall be in proportion to their previous ownership interests under Section 6-103 augmented by an equal share for each survivor of any interest the decedent may have owned in the account immediately

before his death; and the right of survivorship continues between the surviving parties."

We hold that the presumptions created in these two sections accurately reflect the common experiences of mankind in regard to joint and survivorship accounts. As a result, we adopt these specific sections as the law of this state.[1]

Use of these rules does not significantly alter our earlier case law; it merely amends our earlier analytic framework so that the intent of the parties to create joint and survivorship accounts can be better effectuated.

In our earlier cases we ordinarily dealt with the right of survivorship to such accounts, not the right to control the funds on deposit during the lifetimes of the parties to the accounts. The presumption in favor of holding that such an interest exists has been essentially in accord with creator intent and the Uniform Probate Code even though we have required an intent to transfer a present interest, as well as a survivorship interest.

For example, in *In re Estate of Svab* (1967), 11 Ohio St. 2d 182, this court held that a survivorship interest was not created because it was shown that the creator of the account had placed the other party's name on the account solely to allow that other person to assist her in conducting her business affairs. Such evidence of the "realities of ownership" can be used to rebut the presumption of survivorship which we have adopted from Section 6-104(a) of the Uniform Probate Code and of course would buttress the presumption adopted from Section 6-103(a).[2] Similarly, in a case dealing with ownership during the lives of the parties, *Union Properties, supra,* the court affirmed a determination that the sole depositor to the account had sole ownership of the funds on deposit after it was shown that the other party's name was placed on the account because an injury prevented the depositor from going to the bank. The presumption adopted from Section 6-103(a) leads to the same result.

In the case at bar, appellee, in forbidding his wife from

---

[1] In so holding, we do not, at this time, adopt any other sections of the code, nor do we adopt them for use on accounts other than joint and survivorship accounts.

[2] On the other hand, it appears that treatment of the accounts as available for the use and benefit of all parties could be used to show that co-ownership of the accounts was intended.

making withdrawals, in maintaining possession of the passbooks for the accounts, and in stating that the money was being held for use in the event of his death or illness, exhibited an intent to maintain control of his contributions to the account. In this context, his statement that he considered the accounts to belong to him and his wife reflected his intention to create a survivorship interest and to authorize use at some future time should he become disabled. Certainly he did not exhibit an intent to make his wife a co-owner of the accounts.

As a consequence, on June 8, 1978, appellee was entitled to withdraw from the accounts that amount which was proportionally attributable to his contributions to those accounts. That proportion of the accounts clearly belonged to him. A constructive trust can be imposed over any amounts withdrawn which exceeded those amounts attributable to his contributions. His withdrawal of any such amounts would be a breach of his fiduciary duty to his wife. Any survivorship rights appellee had in such sums was forfeited.

We modify the judgment of the Court of Appeals and remand the cause to the Probate Division so that it may determine what proportion of the net contributions to the savings accounts is attributable to appellee and so that it may order any amount remaining be included in the inventory.

*Judgment accordingly.*

W. Brown, Sweeney, Locher, Holmes and C. Brown, JJ., concur.

Paul W. Brown, J., dissenting. The lower courts found, and the parties agreed, that the funds in the joint and survivorship accounts were owned equally by Mr. and Mrs. Thompson. Had the funds not been removed, Mr. Thompson would have been entitled to all the funds on Mrs. Thompson's death pursuant to the survivorship provision of the accounts.

When Mr. Thompson closed out the joint and survivorship accounts, he terminated the contract, including the contractual right to survivorship. He has practically admitted that half the funds were his wife's. If he was afraid that she would dissipate the accounts, he should have withdrawn his one-half of the funds and left her's alone. Mr. Thompson should not be permitted to withdraw all the funds from the joint and surviv-

orship accounts and to transfer them to an account to which only he has access, and then argue that the right to survivorship survived so that he can legally keep everything he took. This is especially true because this is a marital situation in which assets acquired by joint effort are usually considered by the contracting parties to be the property of both, absent agreements or circumstances demonstrating a contrary purpose. Here the joint account is some further acknowledgment that the funds were the property of both. The husband's threat to take his wife's name off the account made at an earlier date is not a claim of exclusive ownership, it is merely the act of a spouse who considers himself the dominant financial party with a veto power over expenditures and has no real legal significance. I consider this a poor case in which to generalize about joint and survivorship accounts. I would reverse the Court of Appeals and reinstate the Probate Judge's order.