## Gibbons v. Bokan
### [Cite as 2 AOA 627]

Case No. 89-T-4193
Trumbull County, (11th)
Decided March 30, 1990

R.C. 1107.08
R.C. 1151.19
R.C. 2111.14

*George Chuparkoff, Esq. 42 N. Phelps Street, Youngstown, Ohio 44503, (For Plaintiff-Appellee).*

*William R. Biviano, Esq., P.O. Box 790 Warren, Ohio 44482, (For Defendant-Appellant).*

FORD, J.,

Appellant, Frank Bokan, is the son of Mark and Marie Bokan, both deceased. Marie Bokan also had three children, all of whom are presently living, from a previous marriage. On February 6, 1984, appellant was appointed the guardian of the person and the estate of his father. This guardianship was terminated on November 20, 1985, after the death of Mark Bokan. Subsequently, appellant was appointed the executor of Mark's estate.

Appellant was also appointed the guardian of the person and estate of his mother, Marie, on April 29, 1985. There is evidence in the record that Marie suffered from poor health prior to the commencement of the guardianship, including failing hearing, eyesight, and the possible onset of senility.

Prior to appellant's appointment as guardian of his father, his parents retained exclusive control of their bank books. The record indicates that appellant was not even aware of where these books were kept. Appellant's parents amassed over $100,000 in various bank accounts and certificates of deposit. All of these accounts were held in the names of Mark or Marie Bokan and were joint/survivorship accounts. All monies deposited in these accounts and certificates of deposit were provided by Mark or Marie Bokan.

On April 22, 1983, appellant's name was added as an authorized signature on his parents' passbook savings account at the then Union

National Bank of Youngstown. Ostensibly, the placement of appellant's name on the account was intended to facilitate easy access to monies for the care of either parent in the event of illness or debilitation.

Over the next four years, appellant, as guardian of his father and, later, his mother, closed a large number of his parents' accounts and terminated their certificates of deposit. These financial transactions, which were both multifarious and complex, are aptly summarized by the trial court judgment entry which is attached to this opinion as an appendix. Perusal of the entry indicates that the monies from Mark and Marie Bokan's accounts and certificates were placed in new accounts and CDs, with the appellant and one parent listed as joint/survivorship owners. The record indicates that appellant contributed no funds to any of these accounts. Examination of the record further reveals that some funds from these accounts were used to pay personal expenses of appellant.

Mark and Marie Bokan both died testate. Mark's will left all of his property to Marie. Marie's will specified that, should her husband predecease her, her property would be divided with fifty percent given to appellant and the residue divided among her three children from an earlier marriage.

The record reveals that Mark Bokan, after his debts had been paid, had, according to his final guardianship account, income of $107,000 (which included contributions to the various accounts and certificates by Marie during the couples' married life) plus and additional $19,510.03 which he earned in social security, pensions, and by the time of Marie's death, on March 3, 1987, she had apparently accumulated income of approximately $139,500 (including the $126,510.03 originally possessed jointly with Mark).

Appellee, Paul Gibbons, Marie's son by a previous marriage, was appointed executor of Marie's estate. Upon discovering that the vast bulk of Marie's assets were in the hands of the appellant, appellee filed a declaratory judgment action in Trumbull County Probate Court. A bench trial was held on October 17, 1988, and the court rendered judgment against appellant in its findings of facts, conclusions of law and judgment entry on January 4, 1989.

Appellant timely filed his notice of appeal and asserts the following assignments of error:

"1. The trial court erred in holding that the proceeds of the joint and survivorship accounts established prior to the guardianship of one of the owners are the sole property of the ward's estate.

"2. The trial court erred in holding that appellant failed to meet the burden of proof as to the intent of the parties in creating joint and survivorship accounts when evidence presented was uncontroverted as to the intent of Mark and Marie Bokan."

Appellant now argues two assignments of error before this court, both of which address substantially similar issues of fact and law and will therefore be addressed concurrently.

Neither party contests the applicable law which governs this case. As both parties correctly note, the general presumption by the court, when viewing a joint/survivorship account, is that the corpus of the account belongs, at the death of one party, to the surviving party, as against the estate, unless there is clear and convincing evidence of a different intention at the time of the account was created. *In re Estate of Thompson* (1981), 66 Ohio St. 2d 433. This presumption is rebuttable, and can be overcome by a showing of the "realities of ownership" of the funds. *Thompson, supra,* at 436. As this court noted in *Beaver* v. *Redmond* (1966), 8 Ohio App. 2d 80, 90:

"***When a beneficiary of a joint and survivorship bank account has a confidential relationship with the depositor or the depositor depends on the beneficiary to accomplish his intent in the creation of the joint and survivorship account, a presumption of undue influence arises, and the burden of going forward with evidence shifts to the beneficiary to show that his conduct was free from undue influence or fraud."

*Beaver, supra,* which was affirmed by the Ohio Supreme Court under the name of *In re Estate of Svab* (1967), 11 Ohio St. 2d 1982, was explicitly cited by the *Thompson* court for the proposition that the "realities of ownership" can be used to rebut the presumption of the intent to create a survivorship right in the account or certificate. As this court stressed in *Loomis* v. *Winkelbaurer* (July 22, 1988), Lake App. No. 12-247, unreported, at 6-7, "[i]t is important to note that *Thompson* does *not* strike down the presumption of undue influence that exists when the survivor of a joint account has a confidential relationship with another party to the account.***" (Emphasis in original.)

Appellant agrees that he bears the burden of showing that the creation of several joint/survivorship accounts and CDs in his name

was not accomplished through undue influence or a breach of a fiduciary duty. However, he claims that he carried this burden through the only means available, his own sworn testimony. The trial court, which listened to appellant's testimony, however, did not adopt his version of events.

"We recognized that the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact, *State* v. *DeHass* (1967), 10 Ohio St. 2d 230 [39 O.O. 2d 366], paragraph one of the syllabus, and that as long as the trial court's judgment is supported by some competent, credible evidence the decision will not be reversed by a reviewing court as being against the manifest weight of the evidence, *C.E. Morris Co.* v. *Foley Construction Co.* (1978), 54 Ohio St. 2d 279 [8 O.O. 3d 261], syllabus." *Love* v. *Lewis* (1985), 21 Ohio App. 3d 285, 287.

Examination of the trial court record does not persuade this court that the trial court's decision was against the manifest weight of the evidence. Instead examination of the trial court record indicates that appellant by virtue of his actions, violated R.C. 2111.14(B), by acting in his own best interests, rather than the best interests of his wards. Inspection of the realities of the ownership of the funds in question indicates, both to the trial court and to us, that the monies in question belonged to Mark and Marie Bokan and their respective estates.

Therefore, for the reasons set forth in this opinion, the judgment of the trial court is affirmed.

*Judgment affirmed.*

CHRISTLEY, P.J.,
MAHONEY, J., Concur.