SLAUGHTER, Appellant,

v.

OHIO OPERATING ENGINEERS FEDERAL CREDIT UNION ET AL., Appellees.

[Cite as *Slaughter v. Ohio Operating Engineers Fed. Credit Union*, 161 Ohio App.3d 666, 2005-Ohio-3004.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 84788.

Decided June 16, 2005.

Leodis Harris and Roy M. Kaufman, for appellant.

Gallagher, Sharp, Fulton & Norman, John N. Neal, Timothy T. Brick, and George H. Carr, for appellee Ohio Operating Engineers Federal Credit Union.

CHRISTINE T. McMONAGLE, Judge.

{¶ 1} Plaintiff-appellant, Carolyn Slaughter, appeals the judgment of the Cuyahoga County Common Pleas Court that granted summary judgment to defendant-appellee Ohio Operating Engineers Federal Credit Union on appellant's complaint for damages. For the reasons that follow, we affirm.

{¶ 2} The record reflects that appellant and her son, Ramon Harmon, opened a joint savings/checking account at the Ohio Operating Engineers Federal Credit Union ("Credit Union") in September 2002, using as the initial deposit a $50,859 check issued by the Veterans Administration and made payable to Ramon. These funds apparently represented compensation for a military-service-connected disability. The Credit Union assigned number 5156 to the account. Shortly after opening the account, appellant presented to the Credit Union a copy of a general durable power of attorney executed by Ramon in November 1993, which granted appellant power to act as Ramon's attorney-in-fact. Appellant testified

that she did so to demonstrate that she was the one who would conduct her son's business "and to explain his mental illness."

{¶ 3} In addition to the initial deposit, Ramon's monthly veterans' benefits checks, also made payable to him, were deposited or directly deposited into this account. From a copy of the transaction history attached to the Credit Union's motion for summary judgment, benefits totaling $10,875 were deposited into account number 5156 from October 2002 through January 2003, all of which were made payable solely to Ramon. No other deposits were made into this account, and it is undisputed that the funds deposited represented government benefits paid solely to Ramon.

{¶ 4} Appellant, nonetheless, made several withdrawals from this account during this time period. In addition to $29,755.42 that she had already withdrawn from the account in the first three months of its existence, appellant requested, in January 2003, that the Credit Union transfer $18,000 from this account to another account at the Credit Union, assigned account number 5014, which appellant jointly owned with her daughter. The Credit Union complied, but subsequently reversed the transaction when Ramon, after complaining to the Credit Union that his mother was "abusing" his account, presented a letter from an attorney affiliated with Persky, Shapiro, Salim, Esper & Arnoff ("Persky, Shapiro") stating that Ramon had not authorized the transfer of $18,000 from account 5156 into account 5014 and, furthermore, that he had revoked the power of attorney earlier executed.

{¶ 5} Appellant thereafter filed the instant lawsuit against the Credit Union and later amended that complaint to add claims against Persky, Shapiro. She alleged that (1) the Credit Union was grossly negligent when it made an unauthorized withdrawal of $18,000 from the account that she jointly owned with her daughter; (2) the Credit Union "improperly consulted" Persky, Shapiro and "illegally intimated, released or disclosed" information about this account to the law firm; and (3) Persky, Shapiro acted with gross negligence when it did not investigate Ramon's past mental history and, thereafter, aided and abetted the Credit Union in its withdrawal of $18,000 from account number 5014. Appellant sought compensatory and punitive damages.

{¶ 6} The Credit Union answered and asserted a four-count counterclaim, which sought an accounting and damages for breach of fiduciary duty/misappropriation, conversion, and fraud. Appellant eventually dismissed her claims against Persky, Shapiro. The Credit Union moved for summary judgment on the grounds that the $18,000 belonged to Ramon and not appellant under the authority of *In re Estate of Thompson* (1981), 66 Ohio St.2d 433, 20 O.O.3d 371, 423 N.E.2d 90, and, therefore, appellant's claims against it must fail. The court

agreed and granted the motion. The Credit Union thereafter dismissed its counterclaim.

{¶ 7} Appellant is now before this court and assigns six errors for our review. Because her assigned errors relate to the court's decision to grant summary judgment in favor of the Credit Union, we will discuss them together.

{¶ 8} An appellate court reviews a trial court's decision on a motion for summary judgment de novo. *Grafton v. Ohio Edison Co.* (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241. Summary judgment is appropriate when, construing the evidence most strongly in favor of the nonmoving party, (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, that conclusion being adverse to the nonmoving party. *Zivich v. Mentor Soccer Club, Inc.* (1998), 82 Ohio St.3d 367, 369–370, 696 N.E.2d 201, citing *Horton v. Harwick Chem. Corp.* (1995), 73 Ohio St.3d 679, 653 N.E.2d 1196, paragraph three of the syllabus; see, also, Civ.R. 56(C).

{¶ 9} Appellant argues that the trial court erred in applying the law of joint-and-survivorship accounts when there was no evidence that account number 5156 was a joint-and-survivorship account. Nonetheless, appellant concedes, and the Credit Union does not dispute, that she and Ramon opened this account jointly and that it is governed by the Credit Union's Membership and Account Agreement ("Agreement"). Paragraph 3(a) of the Agreement defines a multiple-party account as an "account owned by two or more persons" and, unless otherwise stated, "includes rights of survivorship."

{¶ 10} Here, the documentary evidence appended to the parties' briefs does not indicate that account number 5156 owned jointly by appellant and Ramon is anything other than an account with rights of survivorship. Indeed, the Agreement indicates to the contrary. Appellant, therefore, is incorrect in her assertion that the law governing joint-and-survivorship accounts does not apply.

{¶ 11} Funds in a joint-and-survivorship account belong, "during the lifetime of all parties, to the parties in proportion to the net contributions by each to the sums on deposit, unless there is clear and convincing evidence of a different intent." *In re Estate of Thompson,* 66 Ohio St.2d 433, 20 O.O.3d 371, 423 N.E.2d 90, paragraph one of the syllabus, overruled, in part, by *Wright v. Bloom* (1994), 69 Ohio St.3d 596, 635 N.E.2d 31, paragraph two of the syllabus.[1]

---

1. *Wright* overruled paragraph two of the syllabus of *In re Estate of Thompson,* 66 Ohio St.2d 433, 20 O.O.3d 371, 423 N.E.2d 90. *Thompson* remains good law as it pertains to joint-and-survivorship accounts *during the lifetime* of the parties to an account. See *In re Estate of Platt,* 148 Ohio App.3d 132, 2002-Ohio-3382, 772 N.E.2d 198, at ¶ 16. It is the disposition of funds that remain on deposit in such an account at the time of a co-owner's death that the

{¶ 12} The documentary evidence appended to the parties' briefs indicates that appellant contributed no funds to account number 5156. On the contrary, all deposits into this account consisted of checks issued by the Veterans Administration and made payable solely to Ramon. Although appellant testified that Ramon authorized several of the withdrawals she made from this account, the evidence indicates that Ramon gave no such authority for appellant's withdrawal of the $18,000 at issue in this case.

{¶ 13} Notwithstanding this lack of authority, appellant appears to claim that she was entitled to transfer these funds by virtue of paragraph 3(b) of the Agreement, which governs the control of multiple-party accounts and provides that "[a]ny owner may withdraw all funds [and] transfer * * * all or any part of the shares without the consent of the other owner(s)." Because she is a joint owner of this account, appellant contends that the Credit Union erred when it reversed the transaction without taking into account this provision of the Agreement.

{¶ 14} This provision in the Agreement, however, does not take precedence over the law governing ownership of joint-and-survivorship accounts *during the lifetime* of the owners. As stated previously, the evidence appended to the parties' briefs does not indicate that appellant contributed any funds to account number 5156. She therefore has no ownership interest in this account and, despite the Agreement's provision regarding multiple accounts, she was not entitled to transfer funds belonging to Ramon to an account owned by her and her daughter.

{¶ 15} Nor does the documentary evidence attached to her brief otherwise create an issue of fact precluding summary judgment. The deposition testimony of the Credit Union employee responsible for the transfer transactions at issue here, Cynthia Webb, indicates that the funds deposited into account number 5156 came from government-issued checks made payable solely to Ramon. Upon learning that the $18,000 transaction was not authorized by Ramon, she transferred the funds back into account number 5156 and issued a check to Ramon for that amount. The deposition testimony of the manager of the Credit Union, Kenneth Strnad, confirmed and validated Webb's testimony. Thus, contrary to appellant's argument, this documentary evidence does not create an issue of fact precluding summary judgment.

---

*Wright* court altered. *Wright v. Bloom,* 69 Ohio St.3d at 607, 635 N.E.2d 31. In that event, the monies in the account automatically pass to the surviving owner upon the death of a co-owner of a joint-and-survivorship bank account, absent evidence of "fraud, duress, undue influence or lack of capacity on the part of the decedent" in creating the account. Id.

{¶ 16} The same is true of the affidavits of two employees of other credit unions. Both individuals aver that a credit union has no authority to reverse a transaction upon the complaint of a co-owner of a joint account when the original withdrawal is authorized. Although the original $18,000 withdrawal in this case was not authorized, of greater importance is the uncontroverted evidence that appellant contributed no funds to the joint account from which she sought to, and did, withdraw $18,000. Thus, this evidence does not create an issue of fact precluding summary judgment.

{¶ 17} Nor does the e-mail communication similarly attached to appellant's opposition brief create an issue of fact. First and foremost, the e-mail communication is not the type of documentary evidence authorized by Civ.R. 56. "[P]leadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact" are the types of documentary evidence authorized by this rule. Be that as it may, even if it were within the bounds of this rule, the communication itself defers to state law in the area of joint-and-survivorship accounts. Because state law restricts the ownership of funds in a joint-and-survivorship account to the net contributions of the owners of the account, and the evidence indicates that appellant contributed no such funds, there remains no genuine issue of material fact. There were no damages, as appellant had no ownership interest in the fund. In short, one cannot sue for the loss of something she never owned. Summary judgment was, therefore, properly granted to the Credit Union.

{¶ 18} Appellant's assignments of error are not well taken and are overruled.

Judgment affirmed.

BLACKMON, A.J., and GALLAGHER, J., concur.