DECISION AND JUDGMENT ENTRY
{¶ 1} Appellant, Richard L. Dashner, appeals from a judgment entered by the Toledo Municipal Court in favor of appellee, Dean Dashner. For the reasons that follow, we reverse the judgment of the trial court.
 {¶ 2} On August 25, 2003, Dean filed a two-count complaint against his brother, Richard. The first count related to a trust agreement executed by the parties' parents, Maxine and Clarence Dashner. The second count related to certain checks from Clarence Dashner's checking account that had been made out to and signed by appellant. Dean dismissed the second count of his complaint just before trial on January 12, 2005.
 {¶ 3} At trial, the parties stipulated to the facts contained in paragraphs 1, 3, 4, 5, 6, and 7 of the complaint. Those paragraphs are as follows:
 {¶ 4} "1. On or about the 4th day of August 1993, Clarence L. Dashner, father of the Plaintiff and Defendant herein, executed a Trust Agreement with his wife, Maxine Dashner.
 {¶ 5} "* * *
 {¶ 6} "3. One of the assets of said trust was real estate commonly known as 38 Majorica, Unit 14, Hot Springs Village, Arkansas.
 {¶ 7} "4. Maxine Dashner died May 19, 1996 and Clarence Dashner died in December 2000.
 {¶ 8} "5. Clarence L. Dashner entered into a lease agreement with James Sugimura and Amy Sugimura with respect to the above-captioned property on or about February 15, 1998.
 {¶ 9} "6. Said lease agreement provided for monthly payments by said lessees of $650.00 per month and lessees made said payments for a period of thirty-two months. When Clarence Dashner died in December 2000 lessees had paid a total of $21,400.00.
 {¶ 10} "7. Said monies collected as more fully described above were not deposited in a trust checking account or trust savings account but rather deposited in a joint account bearing the names of Clarence Dashner and Richard L. Dashner.
 {¶ 11} "* * *"
 {¶ 12} In addition to the stipulated facts, undisputed evidence of the following was adduced at trial. Page two of the trust agreement provides who was to receive the income from the trust after Maxine had died and while Clarence was still living:
 {¶ 13} "During the lifetime of the surviving Grantor, all of the income * * * shall be distributed to the surviving Grantor annually, or at more frequent intervals." Thus, during the relevant time period, Clarence was entitled to all of the trust income pursuant to the express terms of the agreement.
 {¶ 14} Shortly after Maxine's death in 1996, Clarence called Richard and informed him that the credit union needed to take his mother off the joint account. Richard went to the credit union with his father, and at that point, Clarence indicated that he wanted Richard's name on the joint account.
 {¶ 15} Clarence later asked Richard to write various checks on the account on Clarence's behalf. These requests came as a result of Clarence's worsening arthritis, and not because of any mental limitations on his part. With one exception, the money that was deposited into the joint account — including all of the money from the Arkansas property rental checks — was used at the direction of and for the benefit of Clarence, and not Richard. The exception came in the form of a $2,000 loan that was made to Richard and was later repaid.[1]
 {¶ 16} Clarence became incapacitated in October 2000. Page 11 of the trust agreement states the following regarding the appointment and responsibility of the successor trustee: "In the event of the death of either Grantor-Trustee, the surviving Grantor-Trustee shall serve alone. Upon the death or incapacity of both Grantor-Trustees, Grantors' son, RICHARD DASHNER, shall serve as Successor Trustee. If RICHARD DASHNER is unable or unwilling to serve, Grantors' son, DEAN DASHNER, shall serve as Successor Trustee." At trial, the parties agreed, and the court acknowledged, that Richard became successor trustee on October 30, 2000.
 {¶ 17} Counsel for both parties informed the court that the issue before it was whether it was proper for Clarence to deposit the rental payments into a joint account rather than into an account designated specifically for Clarence. On June 20, 2005, the trial court issued its findings of fact, conclusions of law, decision and judgment entry, wherein it found: (1) that the rental payments in the amount of $21,400 that were deposited into the joint checking account were trust assets, and; (2) that under the terms of the trust agreement, Dean, as beneficiary, was entitled to one-half of that trust amount, in the amount of $10,700. Richard timely appealed this judgment entry, raising the following assignments of error:
 {¶ 18} I. "THE TRIAL COURT ERRED IN FINDING THAT RICHARD DASHNER WAS THE SUCCESSOR TRUSTEE WHEN THE RENTAL PAYMENTS WERE DEPOSITED IN THE JOINT ACCOUNT."
 {¶ 19} II. "THE COURT ERRED IN DETERMINING THAT THE LEASE PAYMENTS COULD NOT BE DEPOSITED IN A JOINT ACCOUNT."
 {¶ 20} III. "THE COURT ERRED IN DETERMINING THAT RICHARD DASHNER WAS A PROPER PARTY."
 {¶ 21} Richard argues in his first assignment of error that, contrary to the trial court's findings, he was not the successor trustee at the time the joint account was opened or at any time during the period when the rental payments were deposited into the joint account. Richard further argues that the trial court perpetuated its error when it determined that he improperly deposited the rental payments into the joint account rather than into a trust account. We agree with Richard that the trial court's erroneous findings of fact led to the incorrect conclusion that Richard was liable to Dean for rental monies that were deposited into the joint account.
 {¶ 22} There is no question but that all of the rental payments from the Arkansas property were deposited into the joint account prior to October 30, 2000, at a time when Clarence was the sole trustee. As indicated above, the parties agreed — and, at trial, the court acknowledged — that Richard did not become trustee, in accordance with the terms of the trust agreement, until October 30, 2000, when Clarence became incapacitated. Before October 30, 2000, Clarence, alone, was both legally and factually in control of the funds contained in the joint account; the funds were used at Clarence's direction and, with the exception of the $2,000 loan to Richard, were used exclusively for Clarence's benefit. Because the trial court's determinations concerning the time at which Richard became trustee are unsupported by the evidence and, further, resulted in an improper finding of liability on his part, we find the first assignment of error well-taken.
 {¶ 23} We next examine the second assignment of error, wherein Richard argues that the trial court erred in determining that the lease payments could not be deposited into a joint account. In making this determination, the trial court looked to the following language contained in the trust agreement: "All assets, so long as they are held by the Trustee hereunder, together with such other property as may hereafter be added to this Trust, as herein provided * * * shall be held by Trustee, in trust, and managed, invested and from time to time reinvested and disposed of as herein set forth * * *" On the basis of this language, the trial court determined that the terms of the trust agreement required that the rental monies be deposited, at least initially, into a separate trust account belonging only to Clarence.
 {¶ 24} As indicated above, the trust agreement additionally provides that Clarence, as surviving grantor, was entitled to all of the income of the trust, including the rental income from the property. He could use that income as he saw fit, and could deposit it in whatever account he chose. Presumably, it is with this provision in mind that the trial court concluded that the trust agreement would not have been breached if the rental monies, rather than being directly deposited, had been transferred to the joint account from a separate trust account belonging only to Clarence.
 {¶ 25} According to Dean, the "very essence of the trust" was violated when Richard became a party to the joint account who could exercise control over the funds of the trust. Dean cites as evidence of Richard's control, Richard's own testimony wherein he acknowledged that he would reimburse himself for medicine and groceries he had purchased for his father, Clarence, and wherein he acknowledged receipt of the (ultimately repaid) $2,000 loan. But the record is clear, and Dean does not dispute, that all of the checks that Richard wrote on the account were entirely at the direction of and for the personal needs of his father. Thus, the facts unequivocally demonstrate that the money was solely under Clarence's control.
 {¶ 26} We additionally note that the mere fact that rental payments were placed into a joint account is not, in and of itself, evidence that Clarence did not control the money. In Inre Estate of Thompson (1981), 66 Ohio St.2d 433, the Supreme Court of Ohio specifically provided that "[a] joint and survivorship account belongs, during the lifetime of the parties, to the parties in proportion to the net contributions by each to the sums on deposit, unless there is clear and convincing evidence of a different intent." Id., at paragraph one of the syllabus. Thus, under the law, as well as under the facts of this case, the rental money that was deposited into the joint account belonged only to Clarence, and not to Richard.
 {¶ 27} On the basis of the foregoing, we find reversible error in the trial court's determination that the deposit of the rental checks directly into the joint account amounted to a breach of the trust agreement. Accordingly, the second assignment of error is found well-taken.
 {¶ 28} Finally, we examine the third assignment of error, wherein Richard argues that the trial court erred in determining that he was a proper party. This claim, like the one set forth in the first assignment of error, arises from the trial court's erroneous finding that Richard was the trustee when the joint account was opened and when the lease payments were received. As discussed above, it cannot be seriously disputed that Clarence was the sole trustee when the lease payments were received and deposited into the joint account. The terms of the trust specifically provide that the successor trustee cannot be held responsible for "any act or thing done or omitted by any predecessor." Thus, even if it had been found that Clarence's deposits into the joint account were improper — which, of course, they were not — under the express terms of the trust agreement, Richard, as a successor trustee, could not be liable for the acts of his father as the predecessor trustee. Accordingly, we find the third assignment of error well-taken.
 {¶ 29} For all of the foregoing reasons, the judgment of the Toledo Municipal Court is reversed. Appellee is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
JUDGMENT REVERSED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Handwork, J., Skow, J. and Parish, J., concur.
[1] Such a loan was not unprecedented. Dean testified that in either 1979 or 1980 he, himself, received a loan from Clarence in the amount of $20,000. Like Richard's loan, it was subsequently repaid.