OPINION
{¶ 1} Defendant-appellant Clarence Lawson appeals from a judgment of the Common Pleas Court of Montgomery County rejecting his claim that he is entitled to an interest in real estate owned by his mother, plaintiff-appellee Mary Lauricella, and finding that Lauricella did not violate her fiduciary duties to him as his attorney-in-fact. Also, Lawson contends that the trial court erred in determining the proper amount of money that it ordered Lauricella to repay to him. *Page 2 
 {¶ 2} We conclude that the trial court based its decisions in this case upon its express determination that it found Lauricella's testimony to be more credible than Lawson's. We further conclude that there is evidence in this record from which the trial court could make the findings it made, and that these findings support the judgment.
 {¶ 3} Accordingly, the judgment of the trial court is Affirmed.
 I {¶ 4} Mary Lauricella is the mother of Clarence Lawson. In April 2005, Lauricella and her husband, Charles Lauricella, were residing in a home located at 5224 Sugar Maple Drive in Kettering. They purchased the property by deed recorded in May 1999. At that time, Lawson was in the Marine Corps, stationed in Japan. Although he was married, he was involved in divorce proceedings, and was engaged to Gina Daws.
 {¶ 5} In July of 1999, the Lauricellas executed a quitclaim deed adding Lawson's name as a one-third owner of the Sugar Maple home. Lawson paid no money in consideration for his being added as a one-third owner. In April, 2005, Lawson executed a power of attorney authorizing Lauricella to convey or dispose of the home. On May 12, 2005, the Lauricellas executed another quitclaim deed conveying the property solely to Mary Lauricella, with a transfer-on-death provision to Lawson. Lauricella signed the deed on behalf of Lawson. At some point, the parties engaged in negotiations for the sale of the property. They agreed that Lawson would pay $100, 000 for the home. Lawson then transferred the sum of $96, 500 to Lauricella.
 {¶ 6} In August of 2005, Lawson and Daws returned to Ohio and began to reside with the Lauricellas. Lawson arranged to obtain a mortgage loan on the *Page 3 
residence in the sum of $65, 000. He testified that he wanted the mortgage so that he could have some cash for living expenses. Lawson and Lauricella then retained an attorney to draft a purchase agreement. The parties each paid one-hundred and fifty dollars to the attorney.
 {¶ 7} The Lauricellas moved out of the home, leaving Lawson and Daws residing there. A closing was scheduled, but Lauricella did not appear. Because the closing did not occur when scheduled, Lawson lost the "locked-in" interest rate he had secured when he obtained the mortgage loan commitment. Thereafter, on November 7, 2005, Lawson withdrew the sum of $12, 552.50 from three accounts maintained by the Lauricellas at National City Bank and Day Air Credit Union. Lawson, who was also listed on these accounts, did not inform the Lauricellas of the withdrawal.
 {¶ 8} Upon learning that she had missed the closing, Lauricella attempted to set up subsequent closing dates, but received no response from Lawson. When she was unable to schedule another closing date with Lawson, she filed a forcible entry and detainer action seeking to evict Lawson from the property. Lawson filed an answer and counterclaim alleging conversion and breach of fiduciary duty. Lawson also demanded that Lauricella return the $96, 500 and that his one-third interest in the real estate be restored.
 {¶ 9} Following a bench trial, the trial court concluded that Lawson's name had been placed on the Sugar Maple deed solely for estate planning purposes — specifically, because Lauricella wanted to avoid probate court proceedings with regard to the property in the event of the death of herself and her husband. The trial court also determined that Lawson's name was removed from the deed pursuant to his own *Page 4 
request. Therefore, the trial court concluded that Lawson no longer had an interest in the Sugar Maple property. The trial court further concluded that Lauricella did not breach her fiduciary duties when she signed Lawson's name to the deed. Finally, the trial court determined that Lauricella had to return the sum of $96, 000, plus interest, less the $12, 552.50 that had been taken by Lawson.
 {¶ 10} From the judgment of the trial court, Lawson appeals.
 II {¶ 11} Lawson's First Assignment of Error states as follows:
 {¶ 12} "THE TRIAL COURT ERRED BY FAILING TO RECOGNIZE ED'S 1/3 UNDIVIDED INTEREST IN SUGAR MAPLE DRIVE."
 {¶ 13} In this assignment of error, Lawson contests the trial court's factual findings and argues that the evidence does not support the trial court's decision with regard to his claimed interest in the Sugar Maple property. In support, he argues that the record does not support Lauricella's claim that he asked her to remove his name from the deed. He further argues that her claim that she only put him on the deed for estate-planning purposes is not supported by the evidence, and that his one-third interest in the real estate was a gift to him.
 {¶ 14} When reviewing a claim that a judgment is not supported by the evidence, we presume the correctness of the lower court's judgment.Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77. "[J]udgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." C.E. MorrisCo. *Page 5 v. Foley Construction Co. (1978), 54 Ohio St.2d 279, syllabus.
 {¶ 15} In this case, there is evidence that the trial court could reasonably rely upon to reach the conclusion that Lawson asked Lauricella to remove his name from the deed. There is also evidence to support the trial court's finding that Lauricella did not intend to make a gift to Lawson of a one-third interest in the real estate, but that she merely had put his name on the deed for estate-planning purposes.
 {¶ 16} Although Lawson testified that he did not authorize the removal of his name from the deed, Lauricella testified to the contrary. At the time in question, Lawson was involved in divorce proceedings while engaged to another woman. Lauricella introduced a letter she had received from Lawson's fiancee, instructing her to remove Lawson's name from the deed during the pendency of his divorce. Although this letter constitutes inadmissible hearsay, Lawson did not object to its introduction, and the trial court stated that the letter could be admitted to show Lauricella's state of mind at the time she removed Lawson's name from the deed. Furthermore, Lauricella introduced a power of attorney executed by Lawson that authorized her to convey the property on his behalf. The trial court found that this action was consistent with the evidence that Lawson was going through divorce proceedings, with the implication that he wanted to divest himself of any interest in the property.
 {¶ 17} The trial court further found that Lauricella did not make any gift of property to Lawson by placing his name on the deed. Instead, the trial court found that Lauricella had rebutted any presumption of a gift by her testimony that she only placed Lawson's name on the deed so that the property could pass without necessity of probate in the event of her death. Her testimony was supported by several past *Page 6 
incidents where she taken the same action with regard to other property, which she subsequently sold.
 {¶ 18} The credibility of the witnesses and the weight to be given to their testimony are matters for the trier of facts to resolve. State v.DeHass (1967), 10 Ohio St.2d 230. "Because the factfinder . . . has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility." State v. Lawson (August 22, 1997), Montgomery App. No. 16288. Thus, this court will not substitute its judgment for that of the trier of facts on the issue of witness credibility unless it is patently apparent that the trier of facts lost its way in arriving at its verdict. State v. Bradley (Oct. 24, 1997), Champaign App. No. 97-CA-03.
 {¶ 19} At bottom, this is a case with two contradictory stories. There is competent, credible evidence, in the form of Lauricella's testimony and exhibits, to support the trial court's findings and conclusions. Therefore, we cannot say that the judgment of the trial court is against the manifest weight of the evidence.
 {¶ 20} Lawson's First Assignment of Error is overruled.
 III {¶ 21} Lawson's Second Assignment of Error is as follows:
 {¶ 22} "THE TRIAL COURT ERRED BY FAILING TO FIND THAT MARY BREACHED HER FIDUCIARY DUTIES TO HER SON BY CONVERTING HIS INTEREST IN HIS FUNDS AND SUGAR MAPLE DRIVE FOR HER OWN BENEFIT." *Page 7 
 {¶ 23} In this assignment of error, Lawson contends that the evidence does not support the trial court's finding that Lauricella did not violate any of her fiduciary duties to Lawson. In support, he argues that although the power of attorney he executed gave her the power to sell the Sugar Maple residence, it also mandated that she retain for his benefit his share of the proceeds from any sale. Lawson also states that Lauricella breached her fiduciary duty by misappropriating his money. Specifically, he complains that she placed the amount of $96, 500 into her sole account, and that she improperly withdrew $3, 991.21 of his funds from a Janus account.
 {¶ 24} We begin with the claim that Lauricella breached her duty by placing the sum of $96, 500 into an account held solely in her name. Lawson testified that, while he was stationed overseas, he sent Lauricella a cashier's check made payable to her in the sum of $96, 500. He also testified that those funds were to be used for the purchase of the house from Lauricella. Lauricella testified that she received a check, made payable to her, in the sum of $96, 500, from Lawson while he was residing overseas. She testified that she was instructed to put that money into an account in her name only during the pendency of Lawson's divorce. She also testified that she followed that instruction, by placing that money into an account in her name at National City Bank.
 {¶ 25} The testimony and evidence further shows that the parties went to National City Bank, that the $96, 500 was withdrawn from Lauricella's account, and that Lawson then signed a check made out to "cash" in that exact amount. Lawson testified that, at that time, he gave her the money with a yellow receipt stating that the funds were for the sale of the residence. Given this testimony and evidence, we cannot say that the trial court erred by finding that Lauricella did not violate any fiduciary duties in this regard. *Page 8 
Again, the trial court was in the best position to judge credibility.
 {¶ 26} We next address the claim that Lauricella improperly withdrew the sum of $3, 991.21 from a jointly-held Janus account. This claim is not specifically mentioned in Lawson's counterclaim. It was subsequently mentioned in his pre-trial memorandum. At trial, Lawson testified that the Janus account was funded with his monies, and that he did not give Lauricella permission to withdraw the funds. He testified that he did not know the account had been closed until he received a 1099 income tax form in 2006 for the tax year 2005. He testified that his mother forged his signature when she closed the account. He testified that he funded "about a third" of the account, and testified that he had canceled checks showing that he funded it. But he did not produce any such checks.
 {¶ 27} Conversely, Lauricella testified that she and her husband funded the account with $3, 400 of their monies in 1998. She was able to produce documentary evidence verifying that date and amount. She testified that she did not intend to make a gift to Lawson of any interest in these funds, but that she merely placed Lawson's name on the account for purposes of estate planning. She testified that Lawson knew that she was withdrawing the funds, and that when she asked him to sign for the funds, he instructed her to sign on his behalf.
 {¶ 28} As noted by Lawson, "a joint and survivorship account belongs, during the lifetime of all the parties, to the parties in proportion to the net contributions by each to the sums on deposit, unless there is clear and convincing evidence of a different intent." In re Estate ofThompson (1981), 66 Ohio St. 2d 433, paragraph two of the syllabus. The trial court chose to credit Lauricella's testimony with regard to the funding of the *Page 9 
Janus account instead of Lawson's testimony. Thus, the trial court found that the funds in the account belonged properly to Lauricella. We cannot say that the trial court lost its way in so finding.
 {¶ 29} Finally, we address the claim that Lauricella breached her fiduciary duties by removing Lawson's name from the Sugar Maple deed. Although Lawson argues that the power of attorney did not permit Lauricella to remove his name from the deed, we note that the document specifically permitted Lauricella to sell or "otherwise dispose of the house and lot, "and to "release all [his] interest, if any, under the present Probate Code as may be deemed necessary." Furthermore, given our disposition of the First Assignment of Error in Part II above, that Lauricella was acting as directed, we conclude that Lawson failed to prove any breach of duty in this regard
 {¶ 30} Lawson's Second Assignment of Error is overruled.
 IV {¶ 31} The Third Assignment of Error states as follows:
 {¶ 32} "THE TRIAL COURT ERRED BY OFFSETTING LAWSON'S RECOVERY BY THE AMOUNT OF HIS NOVEMBER, 2005, WITHDRAWAL AND BY FAILING TO AWARD TO HIM HIS PORTION OF THE JANUS ACCOUNT."
 {¶ 33} Lawson contends that the trial court erred when it decreased the amount to be repaid by Lauricella by the amount he withdrew from the National City Bank and Day Air Credit Union accounts, and by failing to include the amount of his interest in the Janus account.
 {¶ 34} Lawson claims that the trial court should have increased the amount of his *Page 10 
award by the amount of monies withdrawn by Lauricella from the Janus account. Since we uphold the trial court's finding that those funds belong to Lauricella, we conclude that the trial court did not err by failing to credit this amount to Lawson.
 {¶ 35} Lawson next claims that the trial court should not have deducted from his award the amount of monies withdrawn from the National City Bank and Day Air Credit Union. At trial, Lawson testified that he did take the sum of $12, 552.50 from these accounts. However, he testified that he had partially funded the accounts. He was unable to state what type of accounts these were, and he did not produce any documents to demonstrate that he had funded them. Nor did he testify as to the amount of any such contribution.
 {¶ 36} Lauricella again testified that she put her son's name on these accounts as part of her estate planning. She testified that she wanted Lawson to be able to get the money in case of her death, to pay any burial expenses. She testified that Lawson did not contribute any money to these accounts, and that she and her husband were the exclusive users of the account until she and her son became estranged, and her son withdrew the money.
 {¶ 37} Again, the trial court found Lauricella's testimony to be more credible. We cannot say that this was error. Therefore, we cannot say that the trial court erred by deducting the amounts removed from these accounts from the amount owed to Lawson by Lauricella. Accordingly, the Third Assignment of Error is overruled.
 V {¶ 38} All of Lawson's assignments of error having been overruled, the judgment *Page 11 
of the trial court is Affirmed.
 GRADY, J., and DONOVAN, J., concur. *Page 1