[Cite as *Moyer v. Abbey Credit Union, Inc.*, 2020-Ohio-5410.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| JUDA MOYER | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 28759 |
| | : | |
| v. | : | Trial Court Case No. 2019-MSC-127 |
| | : | |
| ABBEY CREDIT UNION, INC. | : | (Appeal from Probate Court) |
| | : | |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

# O P I N I O N

Rendered on the 25th day of November, 2020.

. . . . . . . . . . .

R. MICHAEL OSBORN, Atty. Reg. No. 0065347, 33 West First Street, Suite 600, Dayton, Ohio 45402
     Attorney for Plaintiff-Appellee

STEPHEN D. MILES, Atty. Reg. No. 0003716 and VINCENT A. LEWIS, Atty. Reg. No. 0071419, 18 West Monument Avenue, Dayton, Ohio 45402
     Attorneys for Defendant-Appellant

. . . . . . . . . . . .

WELBAUM, J.

**{¶ 1}** Defendant-Appellant, Abbey Credit Union, Inc., ("Abbey") appeals from a judgment on the pleadings rendered in favor of Plaintiff-Appellee, Juda Moyer, executor of the Estate of Shirlee A. Garringer ("Moyer"). According to Abbey, the probate court erred in granting judgment on the pleadings because such a disposition was not permitted under Civ.R. 12(C). Abbey further contends that it was entitled to use the self-help right of setoff against an estate account upon discovering that it had mistakenly transferred funds to the estate, when the estate was not entitled to the funds. Abbey also contends that Moyer failed to sustain any damages and was not entitled to the money that was deposited into the estate account.

**{¶ 2}** We conclude that the probate court erred in rendering judgment on the pleadings because the damages were not supported by any evidence. Although Abbey incorrectly exercised the right of setoff, Moyer was not legally entitled to the money. Moyer, therefore, had to establish that she detrimentally relied on Abbey's actions and that damages resulted. Since no proof was presented on these points, the probate court had no basis for awarding Moyer the entire amount of money that had been mistakenly transmitted. Accordingly, the judgment of the probate court will be affirmed in part and reversed in part, and this cause will be remanded for further proceedings concerning damages.

## I. Facts and Course of Proceedings

**{¶ 3}** This case arose from Abbey's mistaken payment of funds in a decedent's account to the executor of the decedent's estate. Specifically, the decedent's account designated a payable on death ("POD") beneficiary to whom the funds should have been

paid, rather than being paid to the executor.

{¶ 4} According to the facts in the complaint (which Abbey mostly admitted),[1] the decedent, Shirlee Garringer, owned a share savings account with Abbey at the time of her death.   On June 25, 2018, an attorney representing Juda Moyer (Garringer's executor) sent Abbey a letter, requesting date of death balance for Garringer's account, as well as the " 'name of the beneficiary [listed on the account] if applicable.' "   Complaint at ¶ 6.

{¶ 5} On June 29, 2018, Abbey responded, stating that it had closed Garringer's account on June 6, 2018, and had issued a check payable to the Estate of Shirlee A. Garringer.   Subsequently, Moyer, as executor, opened a checking and savings accounts for the estate at an Abbey branch location on July 2, 2018; at that time, Moyer deposited Abbey's cashier's check in the amount of $26,239.97 into the estate's accounts.   This check was the same one that Abbey had issued to the estate.   When the check was deposited, Moyer told Abbey to deposit $10,000 into the estate's checking account, and the rest into the estate's savings account.   *Id.* at ¶ 6-10.

{¶ 6} After the money was deposited, Moyer began administering the estate's financial affairs, including depositing funds received from other banks.   She also began writing checks to pay estate expenses.   At some point after the cashier's check was initially deposited, Abbey discovered that Garringer's account contained a POD designation.   As a result, Abbey executed a "transfer" or "charge back" of $26,239.97 from the estate's checking and savings accounts.   *Id.* at ¶ 11-13.

---

[1] The only fact not admitted was the date of Garringer's death, which was alleged to have occurred on May 23, 2018.   *See* Complaint at ¶ 4, and Answer at ¶ 2.

{¶ 7} On December 7, 2018, Moyer's attorney sent Abbey a demand letter requesting that Abbey return the funds it had debited. However, Abbey did not return the funds. *Id.* at ¶ 14-17. As a result, Moyer filed a complaint in the Montgomery County probate court in April 2019, seeking relief on four grounds: breach of contract, conversion, failure to exercise ordinary care under R.C. 1304.03, and failure to comply with R.C. 2117.06. Abbey filed an answer on May 5, 2019, denying liability and asserting affirmative defenses.

{¶ 8} On August 7, 2019, Moyer moved for judgment on the pleadings, and Abbey filed a response. In addition, Abbey filed a motion seeking leave to amend its answer to allege the affirmative defenses of extrajudicial setoff and self-help. The probate court granted Abbey's motion to amend on October 29, 2019. The following day, the court granted Moyer's motion for judgment on the pleadings. Abbey then filed a timely notice of appeal from the judgment, which was docketed as Montgomery App. No. 28620.

{¶ 9} In January 2020, we issued a show cause order which asked the parties to explain why the appeal should not be dismissed for lack of a final appealable order. We then dismissed the appeal on that basis, because the probate court's judgment had not addressed the issue of damages. *See Moyer v. Abbey Credit Union*, 2d Dist. Montgomery No. 28620, p. 2 (Decision and Final Judgment Entry, Feb. 13, 2020).

{¶ 10} After the appeal was dismissed, the probate court filed an entry and order on February 24, 2020, ordering Abbey to deposit and/or return the sum of $26,239.97 (the amount of the cashier's check made payable to the Estate of Shirlee Garringer) into the estate's checking and/or savings accounts at Abbey Credit Union within 30 days. Abbey then appealed from both judgments on March 19, 2020.

## II.   The Motion for Judgment on the Pleadings

{¶ 11} Abbey's sole assignment of error states that:

The Trial Court Erred in Granting the Plaintiff's Motion for Judgment on the Pleadings.

{¶ 12} Abbey raises several issues under this assignment of error.   For purposes of clarity, we will discuss the issues separately, beginning first with the procedural posture of the case.

## A.   Was the Probate Court's Procedure Appropriate?

{¶ 13} Abbey's first argument is that the probate court should not have decided this matter based on the pleadings because Civ.R. 12(C) motions are to be used offensively, not defensively.   In response, Moyer argues that Abbey failed to raise this point below.   Moyer further notes that Civ.R. 12(C) allows "any party" to move for judgment on the pleadings, not just defendants.

{¶ 14} As an initial point, we agree that Abbey failed to challenge the process used by the probate court.   In responding to Moyer's Civ.R.12(C) motion, Abbey did note that Civ.R.12(C) is typically invoked by defendants.   Memorandum Opposing Plaintiff's Motion for Judgment on the Pleadings ("Memo Opposing Judgment on the Pleadings"), p. 4.   However, Abbey did not object to having the court consider the merits of the case; instead, Abbey argued that the standard (of construing the facts most favorably to the nonmovant) "cuts the other way" when the plaintiff is the movant.   *Id.*

{¶ 15} The parties' agreement to a particular procedure does not mean that a court

is correct in following their lead if the parties' analysis is, in fact, incorrect. Therefore, we look to Civ.R. 12(C) and caselaw to decide this point. Civ.R. 12(C) provides that "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." Although defendants typically file these motions, that is not always the case.

{¶ 16} In *Portfolio Recovery Assocs., L.L.C. v. VanLeeuwen*, 2d Dist. Montgomery No. 26692, 2016-Ohio-2962, we considered a situation in which the plaintiff, an assignee of a credit card issuer, brought suit against a defendant and was then granted judgment on the pleadings. *Id.* at ¶ 2. In discussing the plaintiff's motion, we commented that:

"In the determination of a Civ.R. 12(C) motion, the nonmoving party is entitled to have all of the material allegations in the pleading, with all reasonable inferences to be drawn therefrom, construed in his favor as true." *Am. Tax Funding L.L.C. v. Miamisburg*, 2d Dist. Montgomery No. 24494, 2011-Ohio-4161, ¶ 31. In the review of a motion for judgment on the pleadings to dismiss a complaint, the Supreme Court of Ohio has declared that, "entry of judgment pursuant to Civ.R. 12(C) is only appropriate 'where a court (1) construes the material allegations in the complaint, with all reasonable inferences to be drawn therefrom, in favor of the nonmoving party as true, and (2) finds beyond doubt, that the plaintiff could prove no set of facts in support of his claim that would entitle him to relief.' " *Hester v. Dwivedi*, 89 Ohio St.3d 575, 577-78, 733 N.E.2d 1161 (2000), citing *State ex rel. Midwest Pride IV, Inc. v. Pontious*, 75 Ohio St.3d 565, 570, 664 N.E.2d 931 (1996). This high burden is not lessened when

a motion for a judgment on the pleadings is filed to obtain judgment, as the movant must prove, beyond a doubt, the absence of any genuine issue of fact and that it is entitled to judgment as a matter of law. We have held that a summary judgment "is to be awarded only with great caution, with all doubts resolved in favor of the nonmoving party, because it deprives the nonmoving party of his day in court." *Smith v. Five Rivers MetroParks*, 134 Ohio App.3d 754, 764, 732 N.E.2d 422 (2d Dist.1999), citing *Norris v. Ohio Std. Oil Co.* 70 Ohio St.2d 1, 2, 433 N.E.2d 615 (1982). The same degree of caution must be exercised when considering a motion for judgment on the pleadings.

*Id.* at ¶ 15.

{¶ 17} As Moyer notes, Civ.R. 12(C) refers to "any" party, not just to plaintiffs. Thus, while granting a plaintiff's motion for judgment on the pleadings is somewhat rare, it is not inappropriate. With that in mind, we will consider the next point that Abbey has raised.

### B. Alleged Right of Setoff

{¶ 18} Abbey's second argument is that it was entitled to use its right of setoff to retrieve money from Moyer's account. The probate court rejected this contention, stating that no mutuality of obligation or debtor-creditor relationship existed between the bank and the estate. Entry Granting Plaintiff's Motion for Judgment on the Pleadings ("Entry"), p. 8-9.

{¶ 19} We review decisions on motions for judgment on the pleadings de novo,

because these motions present only questions of law. "De novo review mandates an independent decision, without deference to a trial court's determination." *Howard v. HCR ManorCare, Inc.*, 2018-Ohio-1053, 99 N.E.3d 429, ¶ 23 (2d Dist.).

{¶ 20} "Bank setoff is an extrajudicial self-help remedy based on general principles of equity. It allows a bank to apply general deposits of a depositor against a depositor's matured debt. Courts have found that this right arises from the contractual debtor-creditor relationship created between depositor and bank when an account is opened." *Daugherty v. Cent. Tr. Co. of Northeastern Ohio*, 28 Ohio St.3d 441, 446, 504 N.E.2d 1100 (1986). "Setoff is not strictly limited by statute, and the courts can allow setoff upon equitable principles where necessary to prevent clear injustice." *Walter v. Natl. City Bank of Cleveland*, 42 Ohio St.2d 524, 330 N.E.2d 425 (1975), paragraph one of the syllabus.

{¶ 21} "[T]hree conditions must be satisfied before a bank may set off a customer's deposits against his indebtedness to the bank: (1) the existence of mutuality of obligation, (2) the debtor's ownership of the funds used for setoff, and (3) the ripeness of the existing indebtedness for collection at the time of the setoff." *Citizens Fed. Bank, FSB v. Zierolf*, 119 Ohio App.3d 46, 49, 694 N.E.2d 496 (2d Dist.1997).

{¶ 22} After considering the law and the record, we agree with the probate court that mutuality of obligation did not exist here. We explained in *Zierolf* that "[t]he mutuality of obligation which must be shown to entitle a bank to a setoff must exist as between the bank and its customer. As the term implies, the bank must hold funds on behalf of the customer which it is obligated to pay to the customer, and the customer must be obligated in some way to the bank, such as through a promissory note." *Id.* at 51.

{¶ 23} In *Zierolf*, the party to whom setoff was applied was a bank customer who had signed a $160,000 promissory note to the bank and had defaulted on the note. The bank then placed a hold on a CD of which the debtor was a co-owner. *Id.* at 48. Similarly, in *Walter*, a bank attempted to set off the amount of a promissory note that its customer had signed. However, in that case, the court rejected setoff because the loan had not yet matured. *Walter*, 42 Ohio St.2d at 527, 330 N.E.2d 425. Likewise, in *Kopp v. Bank One, NA*, 11th Dist. Lake No. 2002-L-025, 2003-Ohio-64, a bank set off the amount of a defaulted car loan that it held against a joint and survivorship account of which the debtor was a joint owner. *Id.* at ¶ 2-4.

{¶ 24} In the case before us, there was no such mutuality of obligation. Moyer did not borrow money from Abbey. Instead, Abbey mistakenly paid money from another account holder to Moyer. The fact that Moyer later deposited the money at Abbey was a mere coincidence. Accordingly, setoff did not apply to the situation in the case before us, and the probate court did not err in rejecting that theory.

## B.   Charge-Back

{¶ 25} Abbey also argues that the probate court erred in focusing on the issue of whether Abbey was entitled to take a "charge-back" of the funds in the account. According to Abbey, it never asserted that it was entitled to a charge-back under R.C. 1304.24(A). Instead, Abbey argues that its claim was one for money paid by mistake. Abbey also argues that Moyer was not entitled to the money, as it did below. Memo Opposing Judgment on the Pleadings at p. 4.

{¶ 26} One of the matters the probate court discussed was whether Abbey was

entitled to revoke or "charge-back" the credits it made to the estate's account. The court answered this negatively, concluding that because Abbey paid Moyer by cashier's check, this payment, being the equivalent of cash, was final when the check was given to Moyer, and Abbey was not entitled to a charge-back under R.C. 1304.24(A). Entry at p. 5-6.

**{¶ 27}** Again, due to the nature of a judgment on the pleadings, we review the probate court's decision on a de novo basis, which means that we do not defer to the lower court's decision. *Howard*, 2018-Ohio-1053, 99 N.E.3d 429, at ¶ 23.

**{¶ 28}** R.C. 1304.24(A) provides that:

If a collecting bank has made provisional settlement with its customer for an item and fails by reason of dishonor, suspension of payments by a bank, or otherwise to receive settlement for the item which is or becomes final, the bank may revoke the settlement given by it, charge back the amount of any credit given for the item to its customer's account, or obtain refund from its customer whether or not it is able to return the items if by its midnight deadline or within a longer reasonable time after it learns the facts it returns the item or sends notification of the facts. If the return or notice is delayed beyond the bank's midnight deadline or a longer reasonable time after it learns the facts, the bank may revoke the settlement, charge back the credit, or obtain a refund from its customer, but it is liable for any loss resulting from the delay. These rights to revoke, charge-back, and obtain refund terminate if and when a settlement for the item received by the bank is or becomes final.

**{¶ 29}** The settlement here was made by a cashier's check on which Abbey was

both the drawer and drawee. A cashier's check is defined as "a draft with respect to which the drawer and drawee are the same bank or branches of the same bank." R.C. 1303.03(G). *See also* R.C. 1304.01(C) (which indicates that the definition of a cashier's check as used in R.C. 1304.01 to 1304.40 has the same meaning as in R.C. 1303.03).

**{¶ 30}** Concerning tender of cashier's checks, R.C. 1304.23(A)(2)(a) states that the time of settlement is "when the cash or check is sent or delivered."[2] The time of settlement, therefore, would have been on June 6, 2018, when Abbey closed the Garringer account and sent or delivered the certified check to Moyer.

**{¶ 31}** R.C. 1304.23(C) further provides that:

If settlement for an item is made by cashier's check or teller's check, both of the following apply:

(1) If the person receiving settlement, before its midnight deadline, presents or forwards the check for collection, settlement is final when the check is finally paid.

(2) If the person receiving settlement, before its midnight deadline, fails to present or forward the check for collection, settlement is final at the midnight deadline of the person receiving settlement.

**{¶ 32}** And finally, R.C. 1304.25 states that:

(A) An item is finally paid by a payor bank when the bank has done any of the following:

(1) Paid the item in cash;

---

[2] This provision applies in the absence of prescription by "federal reserve regulations or circulars, clearing house rules, and similar rules and documents, or agreement." R.C. 1304.02(A). No evidence was presented to indicate that these prescriptions existed.

(2) Settled for the item without having a right to revoke the settlement under statute, clearing house rule, or agreement;

(3) Made a provisional settlement for the item and failed to revoke the settlement in the time and manner permitted by statute, clearing house rule, or agreement.

**{¶ 33}** Again, the parties did not provide information below concerning whether any clearing house rules or agreements applied. However, reading the above statutes together, payment would have been final at the time of Abbey's midnight deadline for July 2, 2018, which is when the estate's accounts were opened and the cashier's check was deposited and was accepted by Abbey. The revocation of settlement did not occur until September 9, when Abbey debited the amount of the cashier's check from Moyer's account. Therefore, if R.C. 1304.24(A) had been the basis for debiting the account, Abbey's right to terminate ended when the payment was final.

**{¶ 34}** As noted, Abbey contends that R.C. 1304.24(A) does not apply because its claim was for "money paid in mistake," and was not for a "bounced check" as contemplated by R.C. 1304.24(A). In support of this argument, Abbey cites *Soc. Bank, NA v. Kuntz*, 2d Dist. Montgomery No. 12637, 1991 WL 213874 (Sept. 17, 1991). In *Kuntz*, we held that a bank was entitled to a constructive trust over a customer's account where the customer had been unlawfully and unjustly enriched by the bank's mistake. *Id.* at *3, citing R.C. 1303.28(A) and (B).

**{¶ 35}** As a preliminary point, it is not completely clear that R.C. 1304.24(A) applies only to "bounced checks." The statute references situations in which "a collecting bank has made provisional settlement with its customer for an item and fails by reason of

dishonor, suspension of payments by a bank, *or otherwise* to receive settlement * * *." (Emphasis added.) The statute does not define what "otherwise" means, and the situation here conceivably could have arisen under the statute, although it appears to apply primarily to situations in which a check is dishonored or refused after being presented for collection.

{¶ 36} We do agree that Abbey did not rely on R.C. 1304.24(A) in the probate court. This was an argument that Moyer raised and that the probate court used to conclude that Abbey did not have a statutory right under R.C. 1304.24(A) to "charge-back" the account.

{¶ 37} Concerning the application of a constructive trust and R.C. 1303.28, this statute was repealed in 1994 and was amended and recodified as R.C. 1303.23. *See* Amendment Note to R.C. 1303.23. After recodification, the statute no longer mentions "constructive trust." Furthermore, unlike the bank in *Kuntz*, Abbey elected to use self-help rather than to place a hold on the funds and file suit, or simply file suit against Moyer. Specifically, after making mistakes in paying a check presented by an unauthorized party, the bank in *Kuntz* paid the wronged party and filed suit against the party it had mistakenly paid. *Id.* at *1.

{¶ 38} Nonetheless, whether or not R.C. 1304.24(A) applies is essentially irrelevant, because the probate court failed to consider R.C. 1304.24(E), which states that "[a] failure to charge-back or claim refund does not affect other rights of the bank against the customer or any other party." R.C. 1301.103(B) also provides that "[u]nless displaced by the particular provisions of Chapters 1301., 1302., 1303., 1304., 1305., 1307., 1308., 1309. , and 1310. of the Revised Code, the principles of law and equity,

including the law merchant and the law relative to capacity to contract, principal and agent, estoppel, fraud, misrepresentation, duress, coercion, *mistake*, bankruptcy, and other validating or invalidating cause supplement their provisions." (Emphasis added.)

{¶ 39} The Ohio Supreme Court has stressed that " 'the general assembly will not be presumed to have intended to abrogate a settled rule of the common law unless the language used in a statute clearly supports such intention.' " *Mandelbaum v. Mandelbaum*, 121 Ohio St.3d 433, 2009-Ohio-1222, 905 N.E.2d 172, ¶ 29, quoting *State ex rel. Hunt v. Fronizer*, 77 Ohio St. 7, 16, 82 N.E. 518 (1907). *Accord Cheatham I.R.A. v. Huntington Natl. Bank*, 157 Ohio St.3d 358, 2019-Ohio-3342, 137 N.E.3d 45, ¶ 21.

{¶ 40} Thus, even if Abbey was not entitled to remove the funds based on setoff or charge-back, that does not mean that common law principles cannot apply here. Before the probate court's decision was issued, Abbey amended its answer to include affirmative defenses, including the fact that the estate had no right to the funds and that a lack of consideration existed. In addition, Abbey previously had raised the issue of mistake, citing *Firestone Tire & Rubber Co. v. Cent. Nat. Bank of Cleveland*, 159 Ohio St. 423, 112 N.E.2d 636 (1953). Memo Opposing Judgment on the Pleadings at p. 2. And, as noted, Abbey further raised the fact that Moyer could not claim damages, as the estate was never entitled to the money.

{¶ 41} In the case before us, Moyer's complaint was based on breach of contract, conversion, failure to exercise ordinary care under R.C. 1304.03, and failure to comply with R.C. 2117.06. In its original decision, the probate court did not indicate the ground on which its judgment was issued; the court primarily discussed the remedies of setoff and charge-back and concluded that Abbey was not entitled to use these remedies to

deduct the money from Moyer's accounts. While this may be true, the issue of damages for Abbey's acts must be considered. However, the probate court did not specifically address the damages issue. Instead, after we remanded the case for lack of a final appealable order, the court simply ordered Abbey to pay Moyer the entire amount of the claim, without any discussion at all.

{¶ 42} "In a breach of contract claim, the plaintiff must prove the existence of a contract, the plaintiff's performance under the contract, the defendant's breach, and damages." *Meeker R & D, Inc. v. Evenflo Co.*, 2016-Ohio-2688, 52 N.E.3d 1207, ¶ 41 (11th Dist.), citing *Doner v. Snapp*, 98 Ohio App.3d 597, 600, 649 N.E.2d 42 (2d Dist.1994). There is no question that a contractual relationship existed here by virtue of the fact that Moyer opened up checking and savings accounts with Abbey. However, no contract terms were provided to the probate court, and as indicated, the court did not give any reasons for its decision on damages.

{¶ 43} "To recover on a breach-of-contract claim, the claimant must prove not only that the contract was breached, but that the claimant was thereby damaged." *Metropolitan Life Ins. Co. v. Triskett Illinois, Inc.*, 97 Ohio App.3d 228, 235, 646 N.E.2d 528 (1st Dist.1994). *Accord Daniel v. Walder*, 2d Dist. Montgomery No. 27558, 2017-Ohio-8914, ¶ 13. " 'As a general rule, an injured party cannot recover damages for breach of contract beyond the amount that is established by the evidence with reasonable certainty, and generally, courts have required greater certainty in the proof of damages for breach of contract than in tort.' " *Walder* at ¶ 13, quoting *Rhodes v. Rhodes Industries, Inc.*, 71 Ohio App.3d 797, 808-809, 595 N.E.2d 441 (8th Dist.1991). " 'The normal remedy for a breach of contract claim is to give the injured party such relief as will

put him in as good a position as if the contract had been performed.' " *Id.*, quoting *Tucker v. Young*, 4th Dist. Highland No. 04CA10, 2006-Ohio-1126, ¶ 30.

{¶ 44} In the case before us, there is no dispute about the fact that Moyer was not legally entitled to the funds either when Abbey gave Moyer the check or when Moyer deposited the check in the bank. Consequently, it is difficult to see what, if any, damages Moyer sustained as a result of the breach.

{¶ 45} In *Firestone*, the Supreme Court of Ohio held that "[m]oney paid to another under the mistaken supposition of the existence of a specific fact which would entitle the other to the money, which money would not have been paid had it been known to the payer that the fact did not exist, may be recovered, provided the payment does not result in such a change in the position of the payee that it would be unjust to require a refund." *Firestone*, 159 Ohio St. 423, 112 N.E.2d 636, paragraph four of the syllabus. The ultimate summary of these principles, according to the court, is that "[a] payer, even if negligent in making payment under a mistake of fact, may recover if his act has not resulted in a change in the position of the innocent payee to his detriment." *Id.* at 439.

{¶ 46} Consistent with *Firestone*, Moyer alleged in the complaint that she had "detrimentally relied" on the funds to pay estate expenses. Complaint at ¶ 22. However, beyond this minimal statement in the pleadings, no evidence was ever offered to show what expenses were paid and why those expenses could not have been paid with the other funds deposited with the estate. For example, the probate court noted that Moyer had deposited funds from other institutions into the estate's account, including $23,623.67 that was received from Garringer's account with Wright-Patt Credit Union. Entry at p. 2. Because this figure was never mentioned in the pleadings (to which the

court was restricted), we assume the court obtained the figure from documents that were filed in the probate case involving Garringer's estate. *See Estate of Shirlee A. Garringer*, Montgomery P.C. No. 2018EST01173.[3]

{¶ 47} Even if the court were permitted to consider the probate court record, it appears there were no damages. The inventory filed in that case on August 9, 2018, indicated a $50,706.13 value for the estate. Therefore, the estate had that amount in assets at the time. The first and partial inventory, covering the period from June 18, 2018 through March 20, 2020, was filed on March 20, 2020. According to the inventory, Abbey took back its funds on September 9, 2018. Between July 18, 2018 and September 9, 2018, the estate paid only about $5,963 for expenses that it had incurred. Given the estate's value, it is hard to imagine how Moyer detrimentally relied on Abbey's funds before they were taken back.

{¶ 48} As an example of a situation in which a party was mistakenly paid and suffered detriment that prevented the payor from obtaining a full recovery of the money, see *WesBanco Bank, Inc. v. Smoked Ribs, Inc.*, 2016-Ohio-177, 45 N.E.3d 1066, (4th Dist.). In that case, a bank employee had mistakenly used an incorrect key to code in American Express transactions at a Comfort Inn. As a result, a restaurant (Smoked Ribs, Inc.) was paid instead of the hotel, resulting in an overpayment of about $239,000 to Smoked Ribs. *Id.* at ¶ 4-5. Consistent with *Firestone*, the bank was allowed to

---

[3] Although the pleadings in the estate case are not part of the current record, courts "may take judicial notice of judicial opinions and public records accessible through the Internet." *State v. Bevers*, 2d Dist. Montgomery No. 27651, 2018-Ohio-4135, ¶ 13. The probate records for the Montgomery County Probate Court are accessible over the Internet, and only one estate in the court's online records involves Shirlee Garringer's estate. However, here, while ruling on the Civ.R. 12(C) motion, the probate court was restricted to the pleadings.

recover the overpayments. However, the recovery was limited because Smoked Ribs was able to prove that it detrimentally relied on the money it had received by using some of it for property improvements that it otherwise would not have made. Furthermore, the restaurant made the improvements before receiving notice of the overpayments. *Id.* at ¶ 48-49.

**{¶ 49}** Here, Moyer had notice on September 9, 2018, that a dispute existed concerning the funds. Any actions that Moyer took after that date could not possibly have been the result of detrimental reliance. Moreover, as we said, Moyer failed to submit any proof with respect to her alleged detrimental reliance or payments that were made as a result of her reliance. Although Moyer was not required to include these matters in the pleadings, granting judgment on the pleadings as to damages was not appropriate, given this deficiency.

**{¶ 50}** The remaining claims that Moyer asserted do not provide any basis for damages. As to conversion, it is "an exercise of dominion or control wrongfully exerted over property in denial of or under a claim inconsistent with the rights of another." *Dice v. White Family Cos.*, 173 Ohio App.3d 472, 2007-Ohio-5755, 878 N.E.2d 1105, ¶ 17 (2d Dist.). The elements of an action for conversion are: " '(1) plaintiff's ownership or right to possession of the property at the time of the conversion; (2) defendant's conversion by a wrongful act or disposition of plaintiff's property rights; and (3) damages.' " *Id.*, quoting *Haul Transport of VA, Inc. v. Morgan*, 2d Dist. Montgomery No. 14859, 1995 WL 328995 (June 2, 1995).

**{¶ 51}** "The general rule for the measure of damages in a conversion claim is the value of the property at the time of the conversion." *Windward Ents., Inc. v. Valley City*

*Dev. Group LLC*, 2019-Ohio-3419, 142 N.E.3d 177, ¶ 16 (9th Dist.). However, in tort actions, "the measure of damages is that which will compensate and make the plaintiff whole." *Robinson v. Bates*, 112 Ohio St.3d 17, 2006-Ohio-6362, 857 N.E.2d 1195, ¶ 11. Again, because Moyer was not entitled to the money that was erroneously deposited, there was no need to make her "whole."

**{¶ 52}** More importantly, in Ohio, "[t]he economic-loss rule generally prevents recovery in tort of damages for purely economic loss." *Corporex Dev. & Constr. Mgt., Inc. v. Shook, Inc.*, 106 Ohio St.3d 412, 2005-Ohio-5409, 835 N.E.2d 701, ¶ 6. "This rule stems from the recognition of a balance between tort law, designed to redress losses suffered by breach of a duty imposed by law to protect societal interests, and contract law, which holds that 'parties to a commercial transaction should remain free to govern their own affairs.' " *Id.*, quoting *Chemtrol Adhesives, Inc. v. Am. Mfrs. Mut. Ins. Co.*, 42 Ohio St.3d 40, 42, 537 N.E.2d 624 (1989).

**{¶ 53}** There was no indication here that Moyer suffered anything other than alleged economic loss – which as we noted, she does not appear to have had. The economic loss restriction also disposes of any potential tort claim for breach of ordinary care under R.C. 1304.03, even if that statute applied.

**{¶ 54}** Finally, concerning R.C. 2117.06, which applies to claims of creditors of an estate and time limits for filing claims, the probate court concluded that Abbey was not acting as a creditor of the estate. Entry at p. 8. We agree. As a result, this statute was inapplicable.

**{¶ 55}** In summary, while Abbey was not justified in debiting Moyer's account, Moyer failed to present proof of damages that she sustained as a result. As a result, the

probate court erred in granting judgment on the pleadings with respect to damages, which were required to be proven. Although the outcome of the damages assessment appears clear, the procedural disposition of the case prevented the presentation of any evidence on this point. Accordingly, the case must be reversed and remanded in order to allow the parties to present evidence as to the damages, if any, to be awarded. Abbey's sole assignment of error, therefore, is sustained in part and is overruled in part.

## III.   Conclusion

{¶ 56} Abbey's assignment of error having been sustained in part and overruled in part, the judgment of the probate court is affirmed in part and reversed in part, and this cause is remanded for a hearing on damages.

. . . . . . . . . . . . .

DONOVAN, J. concurs.

FROELICH, J., concurs:

{¶ 57} I concur in the judgment and note only that, on remand for consideration of damages, what the evidence will show and the amount of damages, if any, are matters for the trial court, notwithstanding comments in this opinion.

Copies sent to:

R. Michael Osborn
Stephen D. Miles
Vincent A. Lewis
Hon. Alice O. McCollum